2000 ME 174

Lester T. JOLOVITZ

v.

ALFA ROMEO DISTRIBUTORS OF NORTH AMERICA et al.

Supreme Judicial Court of Maine.

Argued Sept. 5, 2000.

Decided Oct. 19, 2000.

Harold J. Friedman (orally), Melinda P. Shain, Friedman Babcock & Gaythwaite, Portland, for plaintiff.

John A Graustein (orally), Deirdre M. Smith, Drummond Woodsum & MacMahon, Portland, for defendant, Alfa Romeo.

James C. Hunt (orally), Robinson Kriger & McCallum, Portland, for defendant, Forest City.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, and SAUFLEY, JJ.

WATHEN, C.J.

[¶ 1] Plaintiff Lester Jolovitz appeals from a judgment entered in the Superior Court (Kennebec County, *Marden, J.*) in favor of defendants Alfa Romeo Distributors of North America and Forest City Chevrolet on Jolovitz's claims for violation of the Lemon Law, 10 M.R.S.A. §§ 1161–1169 (1997 & Supp.1999); violation of the Unfair Trade Practices Act, 5 M.R.S.A. §§ 205–A to 214 (1989 & Pamph.1999); and breach of the implied warranty of merchantability, 11 M.R.S.A. § 2–314 (1995). Jolovitz also appeals from the court's denial of his motion to reconsider the entry of summary judgment on additional claims for negligence and punitive damages. Finding no error, we affirm.

[¶ 2] The facts as developed at trial may be summarized as follows: On August 31, 1990, Jolovitz purchased a 1991 Alfa Romeo 164 sedan from Forest City. Jolovitz did not experience any problems with the vehicle from the date of his purchase until April 1991, when he drove his vehicle to Forest City and complained of steering wheel vibration. Forest City eliminated the vibration by balancing the car's tires. Jolovitz returned to Forest City in September 1991, and complained that the vehicle pulled to the right. Forest City corrected the problem with a front end alignment. In November 1991, Jolovitz complained that the car was once again pulling to the side of the road, and Forest City centered the car's steering wheel on this visit with a so-called "thrust alignment." In the course of doing this work, a Forest City technician accidently bent the car's tie rods while it was on the lift. As a result of the bent tie rods, the car squeaked when driven. Jolovitz immediately informed Forest City of the squeaking and the technician told him he would have to lubricate the bushings. On his ride home from Portland to Waterville, the squeaking returned and Jolovitz took the car to a Midas dealership a few days later. A Midas technician informed Jolovitz that the squeak was caused by bent tie rods. Jolovitz returned the car to Forest City in December 1991, and Forest City replaced the bent tie rods and the car's rear suspension and, because of these repairs, also performed a four wheel alignment.

[¶ 3] In March 1992, Jolovitz drove the car to Florida. On the last day of his stay in Florida, Jolovitz detected a strange noise. Jolovitz took the car to an Alfa Romeo dealer, and a technician told him that the tires were cupped and needed to be replaced. After an unsuccessful attempt to get either Alfa Romeo or Goodyear to pay for new tires, Jolovitz pur-

chased four new tires. At the tire store, Jolovitz was informed that one of the wheel rims was bent, so he purchased a new rim as well. He then returned to the Alfa Romeo dealer for a four wheel alignment. During his trip to Florida, Jolovitz claims that he detected for the first time a strong smell of gasoline in the passenger compartment of the car after he had filled the tank. The gasoline smell was not present during the rest of his stay in Florida or during his return drive to Maine.

[¶ 4] After returning to Maine, Jolovitz wrote a letter to the manager of Forest City regarding the tire wear and requested that they reimburse him for the replacement cost. Alfa Romeo responded to his request by arranging for Jolovitz to meet with a field representative in April 1992. At the time of this inspection, the car's odometer read 18,326 miles. According to Jolovitz, he inquired at about this time whether other owners of the Alfa Romeo 164 had made similar complaints of either alignment problems or gasoline odor in the passenger compartment and was informed by Forest City that Alfa Romeo had sent the 164 out with improper alignment specifications and that dealers were subsequently notified to change the specs and perform an alignment on all vehicles coming in for service, but that neither Alfa Romeo nor Forest City had any knowledge of complaints about gasoline odor. Jolovitz continued to have alignment and intermittent gas odor problems during 1992 and 1993. At that point, with 34,500 miles on the car, he decided not to use it any longer.

[¶ 5] In November 1993, Jolovitz filed a complaint in District Court, which was dismissed without prejudice, and in December 1993, filed a new complaint in Superior Court. The new complaint sought relief pursuant to the Lemon Law, the Unfair Trade Practices Act, the implied warranty of merchantability, and the "implied warranty of fitness for a particular purpose," and for negligence and punitive damages. All counts were asserted against both Alfa

Romeo and Forest City except for the Lemon Law count, which was asserted only against Alfa Romeo. Alfa Romeo and Forest City each moved for summary judgment, and the Superior Court (*Alexander, J.*) granted summary judgment in favor of defendants on the counts for negligence and punitive damages, but denied defendants' motions with respect to · the remaining counts.

[¶ 6] Over several years of discovery, Jolovitz learned that there were other Alfa Romeo 164 owners who experienced similar odor problems with their cars. Sometime in the fall of 1996, Jolovitz received a notice of recall from Alfa Romeo, informing him of defects in the 164's fuel filler hose. Jolovitz moved to reopen discovery in October 1996, and the Superior Court granted the motion to allow Jolovitz to examine issues related to the gas odor and the recall. During this stage of discovery, Alfa Romeo provided Jolovitz with several letters of complaint received from other 164 owners, all of which described, *inter alia*, problems with strong, intermittent gasoline odors entering the passenger compartment. At the conclusion of discovery and on the basis of this newly discovered evidence, Jolovitz moved, *inter alia*, to reconsider or vacate the prior summary judgment on the claims of negligence and punitive damages and to amend his complaint to add punitive damages as an additional element to the Unfair Trade Practice Act as well as a count of common law fraud and deceit. The court denied this motion, Jolovitz moved for reconsideration, and the court again denied the motion. Following a bench trial and consideration of post-trial motions, the court entered judgment for Alfa Romeo and Forest City on all counts of Jolovitz's complaint.

[¶ 7] Jolovitz argues on appeal that the court erred in finding in favor of Alfa Romeo on the Lemon Law claim. Maine's "Lemon Law" provides consumers with a statutory right to have the manufacturer, its agent or authorized dealer make repairs to a new motor vehicle that does not

conform to all express warranties, provided that the consumer reports the nonconformity to the manufacturer, agent or dealer within two years of the date the vehicle is delivered to the consumer. *See* 10 M.R.S.A. § 1163(1) (1997). If the manufacturer, agent or dealer cannot make the vehicle conform to its warranty provisions "after a reasonable number of attempts" and the defect or condition complained of "substantially impairs the use, safety or value of the motor vehicle," then the manufacturer may replace the vehicle with a comparable vehicle, provided the consumer agrees, or must accept the return of the defective vehicle in exchange for a refund. *See id.* § 1163(2) (Supp.1999). The statute provides a presumption that a reasonable number of repairs have been attempted if either "[t]he same nonconformity has been subject to repair 3 or more times" within the shorter of the warranty term, two years from the date of delivery or 18,000 miles or the vehicle has been out of service due to repairs for 15 or more business days within this time. *See id.* § 1163(3) (1997). It is an affirmative defense under the act that "[a]n alleged nonconformity does not substantially impair the use, safety or value of the motor vehicle." *See id.* § 1164.

[¶ 8] The court concluded as a preliminary matter that because the gasoline odor was not reported until the mileage on the car exceeded 18,000, it would consider only "the alignment of the wheels, the defect in the door and the seat mechanism." The court concluded that these alleged defects did not "substantially impair" the use, safety or value of the car. The court relied on the Oxford American Dictionary (1980) to define impairment as "damaged or weakened" and "substantial" as "being of considerable amount of intensity or validity." Appellate counsel for Jolovitz argues that

the proper standard should be that which we derived from the Uniform Commercial Code: "Any defect that shakes the buyer's faith or undermines his confidence in the reliability and integrity of the purchased item is deemed to work a substantial impairment of the item's value." *See Inniss v. Methot Buick–Opel, Inc.*, 506 A.2d 212, 219 (Me.1986) (citing 11 M.R.S.A. § 2–608(1)). This argument, however, was made for the first time during oral argument on appeal and was not preserved. *See Chadwick–BaRoss, Inc. v. Martin Marietta Corp.*, 483 A.2d 711, 717 (Me.1984). In any event, we find no error in the objective standard used by the court. The subjective standard proposed by Jolovitz may be appropriate in other contexts, but it is not contemplated by the Lemon Law. A nonconformity that resists repair after three attempts will trigger replacement or refund only if the manufacturer is unable to demonstrate objectively that the nonconformity has little effect on use, safety or value. A troublesome appearance item, for example, could shake the confidence of some consumer but could have little or no effect on use, safety or value. Thus, the court did not err in denying the Lemon Law claim.

[¶ 9] Jolovitz also contends that the court erred in finding in favor of Alfa Romeo and Forest City on his claim that they violated the Unfair Trade Practices Act, 5 M.R.S.A. §§ 205–A to 214 (1989 & Pamph.1999).[1] First, he argues they violated UTPA because they failed to provide Lemon Law disclosure notices to him at the time of purchase. The Lemon Law, however, does not mandate that the manufacturer provide Lemon Law disclosures and thus any failure of the manufacturer and, particularly the dealer, to make such disclosure was not a violation of the statute and, accordingly, was not prima facie evi-

---

1. The Unfair Trade Practices Act, 5 M.R.S.A. §§ 205–A to 214 (1989 & Pamph.1999) provides a private remedy to consumers of personal, family or household goods, services or property who suffer "any loss of money or property, real or personal" as a result of an unfair or deceptive act or practice committed in the conduct of trade. *See id.* §§ 207 (1989) & 213 (Pamph.1999).

dence of an unfair or deceptive trade practice. Next, he argues they violated UTPA because they misrepresented that there were no other customer complaints relating to gasoline odor. The court made no finding that a representative of Alfa Romeo or Forest City made false statements of fact regarding the existence of other 164 owners with gasoline odor problems. The court noted that the only expert evidence offered in the case suggested that the odor problems experienced by Jolovitz were caused during refueling or by inappropriate replacement of the fuel cap. Because Jolovitz failed to move for further findings of fact on this issue, we must assume that the court did not find Jolovitz's evidence of misrepresentation credible. *See Tarbuck v. Jaeckel,* 2000 ME 105, ¶ 25, 752 A.2d 176, 183 n. 5. Thus, we find no error in the court's denial of this claim.

■ [¶ 10] We also find no error in the court's judgment in favor of Alfa Romeo and Forest City on Jolovitz's implied warranty of merchantability claim. Pursuant to 11 M.R.S.A. §§ 2–314(1) & 2–316(2) (1995), a warranty of merchantability is implied in a sale of goods if the seller is a merchant in the goods sold and the warranty of merchantability is not expressly excluded in the contract. Merchantable goods are goods that are "fit for the ordinary purposes for which such goods are used." *Id.* § 2–314(2)(c). Jolovitz argues that the "multiple problems" with his Alfa Romeo 164 clearly establish that it was not fit for its ordinary purpose. He complains that the court "never entered a direct finding on the implied warranty claim." The court specifically rejected Jolovitz's contention that, by itself, the repair history on his vehicle established the existence of a manufacturing defect. In the absence of a manufacturing defect, and given the fact that reported problems were repaired, replaced, or adjusted, the court found that Jolovitz's car was fit for its ordinary purpose and thus did not violate the implied warranty of merchantability.

■ [¶ 11] Jolovitz also argues on appeal that the court erred by refusing to grant relief from the summary judgment order on his counts for negligence and punitive damages and by denying his request to amend his complaint to add punitive damages as an additional element of his UTPA claim and to add a new claim for fraud. We disagree. Jolovitz failed to make out a claim for negligence with the newly discovered evidence. Because a claim for punitive damages will not lie unless the plaintiff receives compensatory or actual damages based on the defendant's tortious conduct, *see DiPietro v. Boynton,* 628 A.2d 1019, 1025 (Me.1993), without a meritorious claim for negligence, the newly discovered evidence could not support an independent claim for punitive damages. Likewise, because the UTPA claim is also without merit, the newly discovered evidence could not support a claim of punitive damages, even if a UTPA claim could otherwise support a claim for punitive damages. In addition, the court denied the motion to amend because it found that there was no evidence that the condition underlying the recall for the fuel filler hose existed in this case or that such failure to disclose, if any, is related to any condition for which plaintiff seeks recovery. Jolovitz failed to inform the court as to the basis of the claim of fraud. Although the motion to amend set forth facts that could support a finding of affirmative misrepresentation, it failed to provide any evidence regarding the cause of the intermittent gas odor or how it exposed him to an unreasonable danger. Thus, we cannot find that the court clearly and manifestly abused its discretion and that the amendment is necessary to prevent injustice. *See Bahre v. Liberty Group, Inc.,* 2000 ME 75, ¶¶ 7, 11, 750 A.2d 558, 560, 561; *Thibodeau v. Cole,* 1999 ME 150, ¶ 5, 740 A.2d 40, 42.

The entry is:

Judgment affirmed.