922 A.2d 465 (2007)
2007 ME 62
DAIMLERCHRYSLER CORPORATION
v.
EXECUTIVE DIRECTOR, MAINE REVENUE SERVICES.
Supreme Judicial Court of Maine.
Argued: February 13, 2007.
Decided: May 22, 2007.
*467 Peter O. Larsen (orally), David E. Otero, Cynthia DeBulia Baines, Akerman, Senterfitt, Jacksonville, FL and John M.R. Paterson, Nelson A. Toner, Bernstein Shur Sawyer & Nelson, P.A., Portland, for plaintiff.
G. Steven Rowe, Attorney General, Thomas A. Knowlton, Asst. Atty. Gen. (orally), Peter Rosenberg, Asst. Atty. Gen., Augusta, for defendant.
Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.
SILVER, J.
[¶ 1] DaimlerChrysler Corporation appeals from a judgment entered in the Superior Court (Kennebec County, Marden, J.) affirming a decision of the Acting Executive Director of the Maine Revenue Service denying DCC's request for a sales tax refund. DCC contends that it is entitled to a refund pursuant to 36 M.R.S. § 2011 (2006), and that MRS's interpretation of section 2011 raises multiple constitutional infirmities when applied in conjunction with the Maine Lemon Law, 10 M.R.S. §§ 1161-1169 (2006). We determine that DCC is not entitled to a refund pursuant to 36 M.R.S. § 2011. We further determine that section 2011 is constitutional when applied in connection with the Maine Lemon Law. Accordingly, we affirm the judgment.

I. BACKGROUND
[¶ 2] The relevant facts are undisputed. DCC is a corporation with its principal place of business in Michigan, and is engaged in the business of manufacturing motor vehicles. DCC does not collect and remit sales tax on the sale or lease of motor vehicles in Maine and does not file a sales and use tax return with the State.
[¶ 3] As a manufacturer of motor vehicles, DCC is subject to the Maine Lemon Law, 10 M.R.S. §§ 1161-1169. Pursuant to the Maine Lemon Law, DCC must repurchase a motor vehicle from a consumer in Maine in two situations: (1) following a Maine Lemon Law arbitration decision, see 10 M.R.S. § 1169, and (2) following a decision of an independent arbitrator issued pursuant to an industry-sponsored arbitration proceeding agreed to by the consumer and DCC, see 10 M.R.S. § 1165. Under both of these situations, DCC may also be required to reimburse the consumer the amount of sales tax that the consumer paid in Maine at the time of the motor vehicle's original purchase. See 10 M.R.S. § 1163(2)(B).
[¶ 4] On December 5, 2003, DCC requested a refund of $50,981.94, the total amount of sales tax it paid to the owners of fifty-eight vehicles DCC either replaced or repurchased from March 20, 1996, through June 3, 2003. On December 19, 2003, *468 MRS denied the request. On January 12, 2004, DCC requested reconsideration of the denial. On April 28, 2004, the Acting Executive Director of MRS upheld the denial.
[¶ 5] On June 1, 2004, pursuant to 36 M.R.S. § 151 (2006) and 5 M.R.S. § 11002 (2006), DCC petitioned the Superior Court to review the Acting Executive Director's final decision. The Superior Court affirmed the decision. This appeal followed.

II. TEXTUAL ANALYSIS
A. The Maine Lemon Law
[¶ 6] The Maine Lemon Law "provides consumers with a statutory right to have the manufacturer . . . make repairs to a new motor vehicle that does not conform to all express warranties." Jolovitz v. Alfa Romeo Distribs. of N. Am., 2000 ME 174, ¶ 7, 760 A.2d 625, 627-28. If, "after a reasonable number of attempts," the manufacturer, its agents, or authorized dealers, are unable to repair a defect that "substantially impairs the use, safety or value of the motor vehicle" the manufacturer shall, at the consumer's option, replace the vehicle, or accept the return of the vehicle and refund the consumer. 10 M.R.S. § 1163(2). The refund consists of:
A. The full purchase price or, if a leased vehicle, the lease payments made to date, including any paid finance charges on the purchased or leased vehicle;
B. All collateral charges, including, but not limited to, sales tax, registration fees and similar government charges; and
C. Reasonable costs incurred by the consumer for towing and storage of the vehicle and for procuring alternative transportation while the vehicle could not be driven because it did not conform to any applicable express warranty.
Id. § 1163(2)(A)-(C). A "reasonable allowance for the use of the vehicle" is subtracted from the refund. Id. § 1163(2).
B. Section 2011, "Overpayment; refunds"
[¶ 7] DCC's request for a refund is governed by 36 M.R.S. § 2011.[1]See Kearns *469 v. State Tax Assessor, 658 A.2d 673, 674 (Me.1995). Pursuant to section 2011, a "taxpayer" must place a written request for a refund with the State Tax Assessor. 36 M.R.S. § 2011. If the assessor determines that a tax has been "erroneously or illegally collected or computed" that amount is credited on any taxes then due. Id. The taxpayer, or the "taxpayer's successor in interest" is given the balance of the refund that exceeds currently due taxes. Id. This refund is disallowed if the written application for the refund is not filed within three years of the date of the overpayment. Id. A taxpayer has the opportunity to appeal the final decision of the assessor to the Superior Court. Id.
[¶ 8] DCC advances three separate contentions that it is entitled to a refund pursuant to section 2011:(1) it is a taxpayer; (2) it is a taxpayer's successor; and (3) it is an agent of the State.
[¶ 9] We review the interpretation of a statute de novo. Yeadon Fabric Domes, Inc. v. Me. Sports Complex, LLC., 2006 ME 85, ¶ 13, 901 A.2d 200, 205. "Our main objective in statutory interpretation is to give effect to the Legislature's intent." City of Bangor v. Penobscot County, 2005 ME 35, ¶ 9, 868 A.2d 177, 180 (quotation marks omitted). To determine the Legislature's intent, we first examine the plain meaning of the statute. Id. "If the statute's meaning is clear, we do not look beyond its words, unless the result is illogical or absurd." S. Portland Police Patrol Ass'n v. City of S. Portland, 2006 ME 55, ¶ 5, 896 A.2d 960, 963 (citing Kapler v. Kapler, 2000 ME 131, ¶ 17, 755 A.2d 502, 508). If the statute is ambiguous, we will then examine extrinsic sources, such as legislative history. City of Bangor, 2005 ME 35, ¶ 9, 868 A.2d at 180.
1. DCC is not a Taxpayer
[¶ 10] "Taxpayer" is defined for all provisions of title 36 of the Maine Revised Statutes, which governs taxation. "`Taxpayer' means any person required to file a return under this Title or to pay, withhold and pay over or collect and pay over any tax imposed by this Title." 36 M.R.S. § 111(7)(2006).
[¶ 11] DCC's contention that it became the "taxpayer" by refunding the consumer the amount he or she paid in sales tax does not meet the definition of taxpayer used throughout the title governing taxation. It is undisputed that DCC does not collect sales taxes in Maine and therefore is not required to "collect and pay over any tax." DCC is not paying a tax to the State, as the definition of taxpayer requires; it is reimbursing the consumer for the tax that the consumer paid to the State.
2. DCC is not the Taxpayer's Successor
[¶ 12] DCC contends that if "successor" is given its plain and everyday meaningone that succeeds or follows DCC is the consumer's successor because it refunded the consumer the amount that the consumer paid in sales tax, thereby entitling it to receive a tax refund from the assessor.
[¶ 13] An application of DCC's successor in interest argument demonstrates the inapplicability of its contention. In the present case, the taxpayer, that is, the consumer, is not entitled to any tax refund. There is no refund to which DCC may *470 succeed because the consumer-taxpayer never paid a tax more than once, nor was the consumer-taxpayer subjected to an illegal or erroneous tax. Section 2011 does not grant a successor in interest any refund to which the taxpayer is not entitled.
[¶ 14] The plain language of section 2011 dictates this result. The first sentence of section 2011 governs when a refund is available:
If the State Tax Assessor determines, upon written application by a taxpayer or during the course of an audit, that any tax under this Part has been paid more than once or has been erroneously or illegally collected or computed, the assessor shall certify to the State Controller the amount paid in excess of that legally due.
36 M.R.S. § 2011. However, DCC's contention that it is entitled to a refund does not rely upon that sentence. Rather, DCC relies upon the second sentence of the section, which governs to whom the assessor may grant a refund:
That amount must be credited by the assessor on any taxes then due from the taxpayer and the balance refunded to the taxpayer or the taxpayer's successor in interest. . . .
Id. Section 2011 establishes a taxpayer's successor in interest as a recipient of a taxpayer's refund. DCC's construction of successor is one who refunds a taxpayer for a tax the taxpayer previously paid. DCC misreads the term "taxpayer's successor in interest" as creating a means through which the successor in interest has an independent claim to a tax refund. The language of section 2011 plainly dictates that a successor in interest may only receive a refund to which the taxpayer is entitled.
3. DCC is not an "Agent of the State"
[¶ 15] DCC contends that in refunding the consumer what the consumer paid in sales tax, it is acting on the State's behalf, or as a "conduit" for the State, and is entitled to a refund under section 2011. DCC analogizes its role pursuant to the Maine Lemon Law both to a debtor in bankruptcy and to an ordinary retailer.
[¶ 16] DCC's analogies are ill-fitting. DCC relies on a section of the U.S. Bankruptcy Code, 11 U.S.C.A. § 541 (2004), which defines a debtor's estate, to advance its contention that a debtor handling a tax has no legal title to the tax. DCC contends that it is acting as a "debtor" under the Maine Lemon Law. The U.S. Bankruptcy Code serves completely different purposes than the Maine Lemon Law, and the comparison, though inventive, is not analogous.
[¶ 17] Likewise, DCC is not in a position similar to a retailer. Although both an ordinary retailer and a manufacturer refund sales tax to the consumer, a specific statutory provision allows a retailer to obtain a refund from the State. Pursuant to 36 M.R.S. § 1814(3) (2006), a retailer may obtain a refund for any tax imposed on a consumer that the retailer has subsequently reimbursed to the consumer. Subsection 1814(3) makes clear that a refund is available by reference to section 2011. There is no parallel section in the Maine Lemon Law. Clearly, had the Legislature wanted to provide motor vehicle manufacturers with a refund it could have easily done so, as evidenced by the explicit mechanism the Legislature provided retailers for obtaining a refund. See Arsenault v. Sec'y of State, 2006 ME 111, ¶ 17, 905 A.2d 285, 288-89 (utilizing similar statutory interpretation analysis to a different section of the Maine Revised Statutes); Russello v. United States, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) ("Where Congress *471 includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (quotation marks omitted).

III. CONSTITUTIONAL ANALYSIS
A. Right to a Jury Trial
[¶ 18] DCC's first constitutional argument is a corollary to its textual contentions. DCC contends that if we interpret section 2011 to disallow motor vehicle manufacturers a refund, then the Maine Lemon Law becomes unconstitutional because it assesses damages on manufacturers without the constitutional right to a jury trial. See ME. CONST. art. I, § 20. Thus, DCC contends that to avoid an unconstitutional deprivation of the right to a jury trial, we must accept its interpretation that section 2011 grants motor vehicle manufacturers a refund. However, contrary to DCC's contention, section 2011 is not constitutionally infirm because it fails to grant a refund to a motor vehicle manufacturer.
[¶ 19] We must avoid an unconstitutional construction of a statute if a constitutional interpretation is reasonable. Anderson v. Town of Durham, 2006 ME 39, ¶ 19, 895 A.2d 944, 951.
[¶ 20] The Maine Constitution provides that:
In all civil suits, and in all controversies concerning property, the parties shall have a right to a trial by jury, except in cases where it has heretofore been otherwise practiced. . . .
ME. CONST. art. I, § 20. Actions sounding in equity, "cases where it has heretofore been otherwise practiced," do not have a right to a jury trial. DesMarais v. Desjardins, 664 A.2d 840, 844 (Me.1995); Cyr v. Cote, 396 A.2d 1013, 1016 (Me.1979). In analyzing the right to a jury trial we must determine whether a claim is legal or equitable. See Cyr, 396 A.2d at 1016. This determination "depends upon the basic nature of the issue presented, including the relief sought." DesMarais, 664 A.2d at 844 (quotation marks omitted). A claim for damages to compensate for an injury is a legal claim. Id. If the primary relief requested is equitable, a request for money damages does not make the claim an action at law. Id.
[¶ 21] To determine whether manufacturers are entitled to a jury trial, we must analyze the operation and remedies of the Maine Lemon Law. We are not the first court to determine whether a lemon law is equitable or legal in nature. Faced with resolving multiple constitutional challenges to the New York Lemon Law, the New York Court of Appeals determined that New York's lemon law was equitable in nature. Motor Vehicle Mfrs. Ass'n of the U.S. v. New York, 75 N.Y.2d 175, 551 N.Y.S.2d 470, 550 N.E.2d 919, 922-23 (1990). Similar to the Maine Lemon Law, New York's lemon law provides two remedies to the consumer if the manufacturer, after a reasonable number of attempts, fails to correct a defect or condition that substantially impairs the value of the vehicle. Id. at 920. At the consumer's option, the manufacturer must either replace the vehicle or accept return of the vehicle and refund the purchase price. Id.
[¶ 22] In Motor Vehicle, the plaintiff challenged New York's lemon law, contending that the law deprived motor vehicle manufacturers of their constitutional right to a jury trial. Id. The court first found that the replacement remedy was analogous to specific performance because it "is designed to produce, as nearly practicable under the circumstances, the same performance promised under the contract." Id. at 922. Second, the court determined *472 that the refund remedy was an action for rescission. Id. The court distinguished the lemon law rescission from an action where a consumer first revokes acceptance and then pursues an action to recover the cost of the contract. Id. Actions to recover under a contract after a party has rescinded are actions at law. Id. However, actions for rescission are "not founded upon rescission but are maintained for a rescission" and are actions in equity. Id. (quoting Vail v. Reynolds, 118 N.Y. 297, 23 N.E. 301, 303 (1890) (emphasis in the original)). The court determined that because the refund remedy was an action for rescission and sought to restore the parties close to their original positions, it was an action in equity. Id. at 922-23.
[¶ 23] We find the New York Court of Appeals reasoning persuasive, and determine that the refund portion of the Maine Lemon Law is an action for rescission. Accepting the New York Court of Appeals reasoning, we must determine if Maine has treated rescission as a legal or equitable action. First, we have held exactly as the New York court held, that an action for rescission is an action in equity. Masters v. Van Wart, 125 Me. 402, 407, 134 A. 539, 542 (1926). Indeed, in Masters we quoted the same words from the case the New York Court of Appeals quoted, Vail v. Reynolds, to support our holding. Id. We have further noted that "[i]t is well settled that rescission is an equitable remedy." Capul v. Fleet Bank of Me., 1997 ME 140, ¶ 14, 697 A.2d 66, 70 (quotation marks omitted). Because it is equitable, there is no entitlement to a jury trial in an action for rescission. ME. CONST. art. I, § 20; Cyr, 396 A.2d at 1016. Likewise, the refund portion of the Maine Lemon Law is an action seeking rescission of a contract and therefore is not entitled to a jury trial.
[¶ 24] We note that the Maine Lemon Law requires the manufacturer to refund the consumer for sales tax, 10 M.R.S. § 1163(2)(B), while New York's lemon law, N.Y. GEN. BUS. LAW § 198-a(c)(2) (Supp. 2006), does not have the same requirement. This distinction does not change the equitable nature of the refund provision; the sales tax refund to the consumer operates to return the consumer to the position he or she was in before. Indeed, the New York Court of Appeals specifically addressed this point, noting the fact that:
incidental fees and charges are recoverable under the Lemon Law refund remedy . . . does not compel a . . . conclusion [that the Lemon Law is not equitable]; a party may receive full relief in an equitable action and the awarding of fees as an incident of the equitable relief sought to restore the status quo ante does not disturb the equitable nature of the action.
Motor Vehicle Mfrs. Ass'n of U.S., 551 N.Y.S.2d 470, 550 N.E.2d at 923 (citations omitted) (emphasis in original). We agree with the Court of Appeals that awards and fees incidental to the full equitable remedy, such as sales tax, returning the consumer to the position he or she was in before the contract, do not convert the lemon law refund into a legal action.
[¶ 25] Furthermore, even if we agreed with DCC's contention that the manufacturer's payment of sales tax constituted "damages," it would not change the equitable nature of the refund provision. We have held that "when the primary recovery pursued is equitable, the inclusion of a request for money damages does not convert the proceeding into an action at law." DesMarais, 664 A.2d at 844. Thus, we find the difference between the two states' refund provisions is inconsequential to our *473 determination that the Maine Lemon Law is equitable.
B. Procedural Due Process
[¶ 26] Having determined that DCC is not entitled to a jury trial, we turn to its contention that the Maine Lemon Law arbitration proceedings deprive it of procedural due process rights guaranteed by the Maine and U.S. Constitutions. U.S. CONST. amend. XIV, § 1; ME. CONST. art. I, § 6-A. We review a procedural due process claim in two steps. McNaughton v. Kelsey, 1997 ME 182, ¶ 6, 698 A.2d 1049, 1051. First, we determine if the government has deprived a claimant of life, liberty, or property interests. Id. (citation omitted). Second, if such deprivation occurred, we then determine what process, pursuant to the Fourteenth Amendment, is due utilizing the factors in Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). In re Amberley D., 2001 ME 87, ¶ 11, 775 A.2d 1158, 1163. These factors assess:
First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
Id. (quotation marks omitted).
[¶ 27] Although we have not specifically held so, other courts have determined that a taxpayer's right to a tax refund is sufficient to trigger a property interest. Bosarge v. United States, No. CA 91-0955-P-C, 1992 U.S. Dist. Lexis 12378, *10 (S.D.Ala. July 24, 1992) (collecting cases holding that a taxpayer has a property interest in her tax refund). The right to a tax refund satisfies the first part of the due process inquiry.
[¶ 28] Applying the three Mathews factors, we determine that adequate process was given to DCC. First, the private interest MRS's decision affected was the denial of a tax refund for DCC's payments to consumers totaling $50,981.94. Second, an arbitration decision made pursuant to the Maine Lemon Law affords the parties numerous safeguards to ensure the facts are found and viewed objectively: a neutral arbitrator is selected by the Attorney General, 10 M.R.S. § 1169(1); each party is entitled to one rejection of a proposed arbitrator, id.; the arbitration decision must be in writing, id. § 1169(2); the Attorney General has authority to promulgate rules to promote fairness, id. § 1169(3); the manufacturer or consumer may appeal the arbitrator's decision to the Superior Court, id. § 1169(5); and that appeal is a trial de novo, id.
[¶ 29] These procedures are consonant with other administrative procedures utilized in the Maine Tax Code. For example, section 151, which governs the review of the assessor's decisions, utilizes the same basic procedural framework. See 36 M.R.S. § 151 (2006). A similar procedure governs abatement actions. See 36 M.R.S. §§ 841-850 (2006). DCC contends that it is entitled to procedural safeguards far greater than those granted in similar proceedings.
[¶ 30] Third, the government has an interest in effecting the policy of the Maine Lemon Law without expensive and protracted litigation. Requiring further procedural safeguards would add needless expense and delay to the arbitration procedure. See Seider v. Bd. of Exam'rs of Psychologists, 2000 ME 118, ¶ 24, 754 A.2d 986, 992.
*474 C. Substantive Due Process
[¶ 31] There is no merit to DCC's contention that the Maine Lemon Law violates its substantive due process rights pursuant to the Fourteenth Amendment of the U.S. Constitution.
D. Equal Protection
[¶ 32] DCC contends that because it is not entitled to a refund under section 2011 and is required to refund consumers under the Maine Lemon Law, as a motor vehicle manufacturer it is treated differently than any other manufacturer, violating its right to equal protection of the laws. U.S. CONST. amend. XIV, § 1; ME. CONST. art. I, § 6-A; Anderson, 2006 ME 39, ¶ 28, 895 A.2d at 953.
[¶ 33] To find a violation of equal protection, we first determine if there is some differential treatment among similarly situated individuals. Brann v. State, 424 A.2d 699, 703 (Me.1981). On its face, section 2011 does not treat similarly situated individuals differently. Section 2011 grants a refund to any taxpayer who has overpaid his taxes. 36 M.R.S. § 2011. All manufacturers, regardless of what they manufacture, are entitled to a refund if they have overpaid a tax.
E. Bill of Attainder
[¶ 34] DCC contends that because section 2011 does not allow a refund for the sales tax DCC refunded to the consumer, the Maine Lemon Law constitutes punishment specifically directed at automobile manufacturers, and thus constitutes an unlawful bill of attainder.
[¶ 35] Both the Maine Constitution, article I, section 11, and the U.S. Constitution, article I, section 9, prohibit "bills of attainder, which apply to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial." State v. Myrick, 436 A.2d 379, 383 (Me.1981) (quotation marks omitted). Historically, bills of attainder have inflicted the following punishments: imprisonment, banishment, punitive confiscation of property, and the exclusion of individuals from certain professions. Nixon v. Adm'r of Gen. Servs., 433 U.S. 425, 474, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977). The U.S. Supreme Court, however, has not limited application of bills of attainder to these historical punishments and has adopted a functional test to determine if punishments violate the Attainder Clause. Id. at 475-76, 97 S.Ct. 2777. The functional test analyzes whether or not a law advances non-punitive purposes. Id.; see also, Myrick, 436 A.2d at 383 ("a bill of attainder is penal in nature").
[¶ 36] The Maine Lemon Law is not a bill of attainder. The enforcement of the Maine Lemon Law has a clear non-punitive purpose: to provide consumers with the "right to have the manufacturer . . . make repairs to a new motor vehicle that does not conform to all express warranties." Jolovitz, 2000 ME 174, ¶ 7, 760 A.2d at 627-28.
The entry is:
Judgment affirmed.
NOTES
[1] Title 36 M.R.S. § 2011 (2006) provides:

§ 2011. Overpayment; refunds
If the State Tax Assessor determines, upon written application by a taxpayer or during the course of an audit, that any tax under this Part has been paid more than once or has been erroneously or illegally collected or computed, the assessor shall certify to the State Controller the amount paid in excess of that legally due. That amount must be credited by the assessor on any taxes then due from the taxpayer and the balance refunded to the taxpayer or the taxpayer's successor in interest, but no such credit or refund may be allowed unless within 3 years from the date of overpayment either a written petition stating the grounds upon which the refund or credit is claimed is filed with the assessor or the overpayment is discovered on audit. Interest at the rate determined pursuant to section 186 must be paid on any balance refunded pursuant to this chapter from the date the return listing the overpayment was filed or the date the payment was made, whichever is later, except that no interest may be paid with respect to the refunds provided by section 2013 and, in cases of excessive or erroneous collections, interest must be paid in accordance with section 1814, subsection 3. At the election of the assessor, unless the taxpayer specifically requests a cash refund, the refund may be credited to the taxpayer's sales and use tax account, but, in the case of a credit no further interest may accrue from the date of that election. The taxpayer may not apply for a refund of any amount assessed when administrative and judicial review under section 151 has been completed.
A taxpayer dissatisfied with the decision of the assessor, upon a written request for refund filed under this section may request reconsideration and appeal from the reconsideration to the Superior Court in the same manner and under the same conditions as in the case of assessments made under chapter 7. The decision of the assessor upon a written request for refund becomes final as to law and fact in the same manner and under the same conditions as in the case of assessments made under chapter 7.
Id. (emphasis added).