MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:    2015 ME 3
Docket:      Ken-14-5
Argued:      September 10, 2014
Decided:     January 13, 2015

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.[*]


JOHN DOE XLVI

v.

STEPHANIE ANDERSON et al.


JABAR, J.

[¶1]   John Doe XLVI appeals from a judgment of the Superior Court (Kennebec County, *Murphy, J.*) denying his request for declaratory relief and a temporary restraining order.  Doe argues that Maine's Sex Offender Registration and Notification Act of 1999 (SORNA), 34-A M.R.S. §§ 11201 to 11256 (2012),[1] as applied to him violates the Bill of Attainder, Due Process, and Separation of Powers Clauses of the Maine Constitution.[2]

---

[*]   Silver, J., sat at oral argument and participated in the conferencing process but retired before this opinion was issued.

[1]   Although SORNA has been amended since Doe received notice of the duty to register in 2012, those amendments are not relevant here.  *See, e.g.,* P.L. 2013, ch. 133, § 32 (effective Oct. 9, 2013) (codified at 34-A M.R.S. § 11203(1-A) (2014)).

[2]   Although we agreed in *State v. Letalien* that the constitutionality of the retroactive application of SORNA "depends on a facial examination of the statute, and not on an as applied analysis," we concluded that SORNA "impose[d] an ex post facto punishment *as to* offenders sentenced in the years before [its] effective date . . . for whom registration was a required part of their sentence and who were subsequently made subject to the more burdensome requirements of SORNA" after its effective date.  2009 ME 130, ¶ 1, 985 A.2d 4 (emphasis added).

2

[¶2]  The trial court determined that as applied to Doe SORNA is not punitive, and rejected Doe's bill of attainder claim without considering the lack of a judicial trial and specificity, the other elements of a bill of attainder challenge. We conclude that SORNA is punitive as to offenders who were not sentenced to comply with SORNA when SORNA registration was part of sentencing and who were subsequently subjected to SORNA registration when their earlier offenses were added to the statutory list of sex offenses and registration was removed from sentencing. We therefore vacate the judgment with respect to the bill of attainder issue. Because the trial record does not contain sufficient facts regarding the specificity element of Doe's bill of attainder claim, we remand for further consideration.

## I. BACKGROUND

[¶3]  In January 2003, Doe pleaded guilty to and was convicted of possession of sexually explicit material (Class D), 17 M.R.S.A. § 2924(2) (Supp. 2002)[3] and was sentenced to 364 days' imprisonment, with all but seventy-two hours suspended, and one year of probation.

[¶4] When Doe was convicted, SORNA was part of the sentencing process. At the time of Doe's sentence, the Maine Criminal Code, in a section titled

---

[3]  Title 17 M.R.S.A. § 2924 has since been repealed and the offense of possession of sexually explicit materials has been re-codified in its current location at 17-A M.R.S. § 284.  P.L. 2003 ch. 711, §§ B-1, B-12 (effective July 30, 2004).

"Authorized sentences," required sentencing courts to order defendants who were convicted of sex offenses to comply with SORNA: "As part of a sentence, the court shall order every natural person who is a convicted sex offender or sexually violent predator as defined under Title 34-A, section 11203 to satisfy all requirements set forth in the Sex Offender Registration and Notification Act of 1999." 17-A M.R.S.A. § 1152(2-C) (Supp. 2002).[4] The section of SORNA regarding an offender's duty to register likewise provided, "The court shall determine at the time of sentencing if a defendant is a sex offender or a sexually violent predator. A person who the court determines is a sex offender or a sexually violent predator shall register according to this subchapter." 34-A M.R.S.A. § 11222(1) (Supp. 2002).[5]

[¶5] Doe's Judgment and Commitment form contained a box that the sentencing judge was required to check if the conviction was for an offense requiring SORNA registration. Because possession of sexually explicit material was not then a sex offense as defined by 34-A M.R.S.A. § 11203 (Supp. 2002),[6]

---

[4] Title 17-A M.R.S.A. § 1152(2-C) has since been repealed. P.L. 2009, ch. 365, § A-3 (effective Sept. 12, 2009).

[5] Title 34-A M.R.S.A. § 11222(1) has since been amended. P.L. 2009, ch. 365, § B-15 (effective Sept. 12, 2009) (codified at 34-A M.R.S. § 11222(1) (2014)).

[6] Since Doe was sentenced, 34-A M.R.S.A. § 11203 has been amended numerous times, most notably, for the purposes of the present case, in 2003. *See* P.L. 2003, ch. 371, § 2 (effective Sept. 13, 2003) (codified as amended at 34-A M.R.S.A. § 11203(6) (Supp. 2003)).

4

the sentencing court did not check the box on Doe's Judgment and Commitment form and Doe was not ordered to comply with SORNA.

[¶6] In September 2003, possession of sexually explicit material was added to the list of sex offenses, a conviction for which required the defendant to register. P.L. 2003, ch. 371, § 2 (effective Sept. 13, 2003) (codified as amended at 34-A M.R.S.A. § 11203(6) (Supp. 2003)).[7] In July 2004, a 2003 amendment to the Maine Criminal Code's sentencing provisions regarding sex offenders took effect.[8] P.L. 2003, ch. 711, § B–13 (effective July 30, 2004). After the amendment's effective date, the sentencing court was to order compliance with SORNA's registration provisions "[a]t the time" of sentencing rather than "as part of" a sentence. *See id.*

[¶7] In July 2006, Doe received a letter from the Maine State Police advising him that he was required to register. The following month, he responded with a letter stating that he did not believe he was required to register because there had been no "triggering event" requiring registration, such as a court's determination of the duty to register. After learning of Doe's objection, the Office

---

[7] Although 34-A M.R.S.A. § 11203(6) has been amended since 2003, those amendments are not relevant in the present case. *See e.g.*, P.L. 2005, ch. 423, § 5 (effective Sept. 17, 2005) (codified at 34-A M.R.S. § 11203(6)(C) (2014)).

[8] This amendment changed the sentencing provisions relating to sex offender registration that had been in effect since 1996. *See* P.L. 1995, ch. 680, § 4 (effective July 4, 1996) (codified at 17-A M.R.S.A. § 1152(2-C) (Supp. 1996)).

of the Attorney General sent a letter dated January 10, 2007, to the State Bureau of Identification stating that it would recommend an amendment to SORNA if those convicted after 1999 but before 2003 fell into a "gap in the duty to register."

[¶8] In 2009, 17-A M.R.S. § 1152(2-C) was repealed by P.L. 2009, ch. 365, § A-3 (effective Sept. 12, 2009). This law amended the Maine Criminal Code, repealing "from the sentencing provisions the directive that a court order a person convicted of a sex offense . . . to satisfy all requirements of [SORNA]." L.D. 1157 Summary (124th Legis. 2009). It also amended SORNA to require that a court "notify the offender at the time of sentence of the duty to register[,]" and to provide that an offender's duty to register is triggered by receiving notice from a court, the Department of Corrections, the State Bureau of Identification, or a law enforcement agency. P.L. 2009, ch. 365, § B-15 (effective Sept. 12, 2009).[9] These changes clarified that "the Legislature determines that a duty to register exists based on the conviction," "that a duty to register is not triggered by a court determination, but by and upon notification," "and that the court's duty is only to notify the person of that duty." L.D. 1157 Summary (124th Legis. 2009).

[¶9] In February 2012, Doe received a second notice of the duty to register from the State Bureau of Identification. In April 2012, Doe filed a complaint for a declaratory judgment and temporary restraining order to enjoin the State from

---

[9] *See also* 34-A M.R.S. §§ 1001(8), 11203(1) (defining "Department" and "Bureau").

6

pursuing criminal charges against him for failing to register. In his complaint, Doe alleged that SORNA was an unconstitutional ex post facto law and bill of attainder, and that applying it to him violated the Separation of Powers Clause and his substantive and procedural due process rights. At a hearing on May 3, 2012, the Superior Court rejected Doe's ex post facto challenge. On October 29, 2013, the court entered an order rejecting Doe's due process, separation of powers, and bill of attainder claims. Following the court's denial of his motion to reconsider, Doe timely appealed.[10] *See* M.R. App. P. 2(b).

## II. DISCUSSION

[¶10] Doe argues that applying SORNA's registration requirements to him violates the Bill of Attainder, Separation of Powers, and Due Process Clauses of the Maine Constitution. We are not persuaded by Doe's arguments regarding due process and separation of powers and do not discuss them further. Our discussion is confined to an analysis of whether SORNA is an invalid bill of attainder. In this regard, Doe specifically contends that because the court did not impose SORNA registration obligations on him when he was sentenced, imposing them on him now violates the Bill of Attainder Clause of the Maine Constitution.[11]

---

[10] Doe did not appeal the court's rejection of his ex post facto challenge. Because that issue is not before us, we do not address it.

[11] The federal prohibition against bills of attainder is indistinguishable from the state prohibition against bills of attainder; the standard for determining whether a law constitutes a bill of attainder is the

A.      Standard of Review

[¶11]   We review challenges to the constitutionality of a statute de novo. *Doe I v. Williams*, 2013 ME 24, ¶ 11, 61 A.3d 718.   In so doing, we presume that a statute is constitutional and look for a reasonable interpretation that comports with that presumption.   *Id.*   The challenger bears the burden of overcoming this presumption by proving the statute's unconstitutionality.   *State v. Letalien*, 2009 ME 130, ¶ 15, 985 A.2d 4.

B.      Bill of Attainder Analysis

[¶12]   Pursuant to article I, section 11 of the Maine Constitution, "The Legislature shall pass no bill of attainder [or] ex post facto law . . . ."   *See also* U.S. Const. art. I, § 9, cl. 3 (containing the same prohibitions).   For purposes of both the federal and state constitutions, a bill of attainder is (1) a legislative act that applies specifically to named individuals or to identifiable members of a group, and (2) inflicts punishment upon them (3) without a judicial trial.   *DaimlerChrysler Corp. v. Exec. Dir., Me. Revenue Servs.*, 2007 ME 62, ¶ 35, 922 A.2d 465; *United States v. Lovett*, 328 U.S. 303, 315 (1946).

---

same under both the federal and state constitutions.   *See DaimlerChrysler Corp. v. Exec. Dir., Me. Revenue Servs.*, 2007 ME 62, ¶¶ 35-36, 922 A.2d 465 (adopting the standard used by the U.S. Supreme Court in *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 474-76 (1977)).   The Superior Court correctly identified the standard in its order denying Doe's request for relief.   *Doe 46 v. Anderson*, KENSC-CV-12-124 at 2 (Me. Super. Ct., Ken. Cnty., Oct. 29, 2013).

[¶13] Although it is listed as the second element, we begin our analysis by considering whether requiring Doe to register pursuant to SORNA constitutes "punishment" within the meaning of the Bill of Attainder Clause.

1. Punishment

[¶14] A law imposes punishment for bill of attainder purposes if it is motivated by a legislative intent to punish, does not serve any legitimate nonpunitive purpose, or results in a deprivation of protected liberties that falls within the historical meaning of legislative punishment. *DaimlerChrysler Corp.*, 2007 ME 62, ¶ 35, 922 A.2d 465; *Selective Serv. Sys. v. Minnesota Pub. Research Grp.*, 468 U.S. 841, 852 (1984); *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 474-78 (1977). This "functional" analysis is similar to the "intent-effects" test used to define punishment for ex post facto purposes. *See State v. Haskell*, 2001 ME 154, ¶ 8, 784 A.2d 4 (describing the "intent-effects" test and citing *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963)).

[¶15] Both the "functional" analysis and the "intent-effects" test of punishment include an examination of legislative intent as well as an analysis of the statute's purposes and effects.[12] Here, we can see no reason to distinguish

---

[12] Indeed, these two inquiries constitute the common thread among the various tests for punishment. *See United States v. Usery*, 518 U.S. 267, 277-78 (1996) (articulating a two-part test for punishment under the Double Jeopardy Clause that considers both intent and effects); *Nixon*, 433 U.S. at 475 (applying an intent test and citing the *Mendoza-Martinez* factors in the bill of attainder context); *Artway v. Attorney Gen. of N.J.*, 81 F.3d 1235, 1253-54 (3d Cir. 1996) (articulating a three-part test to identify

between the Bill of Attainder and Ex Post Facto Clauses with respect to the definition of punishment. *See Artway v. Attorney Gen. of N.J.*, 81 F.3d 1235, 1247 (3d Cir. 1996) (reaching the same conclusion). In light of this determination and our experience applying the "intent-effects" test to SORNA in the ex post facto context, we use the "intent-effects" framework to analyze Doe's challenge.[13]

a. Legislative Intent

[¶16] To identify punishment under the "intent-effects" test, we first construe the statute to determine whether the legislature intended its provisions to be civil or criminal. *Haskell*, 2001 ME 154, ¶ 8, 784 A.2d 4. If the legislature indicates its intent to create a civil statute, we then consider, notwithstanding the legislature's stated intent, whether the statute's purposes or effects are so punitive as to override the legislature's stated intent. *Id.* Out of deference to the legislature's intent, we have required a party challenging the statute to provide the

---

punishment for purposes of the Ex Post Facto, Bill of Attainder, and Double Jeopardy Clauses, that "looks to the legislature's subjective purpose in enacting the challenged measure, its 'objective' purpose in terms of proportionality and history, and the measure's effects"); *Doe v. Kelley*, 961 F.Supp. 1105, 1108 (W.D. Mich. 1997) (stating that there is "no universal test for determining whether state action constitutes punishment" and applying a "totality of the circumstances" test that focuses on "(1) legislative intent, (2) designation of the legislation, (3) historical treatment of analogous measures, and (4) effects of the legislation").

[13] "Although the Supreme Court warned against lifting a test for punishment from one constitutional provision and applying it to another, [it has] applied the 'intent-effects' test . . . to both the Double Jeopardy and *Ex Post Facto* Clauses." *State v. Haskell*, 2001 ME 154, ¶ 9 n.7, 784 A.2d 4; *see also Smith v. Doe*, 538 U.S. 84, 97 (2003) (explaining that "the *Mendoza-Martinez* factors are designed to apply in various constitutional contexts" and have their "origins in cases under the Sixth and Eighth Amendments, as well as the Bill of Attainder and the *Ex Post Facto* Clauses"); *Myrie v. Comm'r, N.J. Dept. of Corr.*, 267 F.3d 251, 256 (3d Cir. 2001) (applying the "intent-effects" test to the Double Jeopardy, Ex Post Facto, and Bill of Attainder Clauses).

"clearest proof" that the scheme is so punitive in purpose or effect as to transform it into a punishment. *Id.* ¶¶ 8, 10, 13; *Letalien*, 2009 ME 130, ¶ 31, 985 A.2d 4; *State v. Cosgro*, 2008 ME 64, ¶ 2, 945 A.2d 1221.

[¶17]  Here, the Maine Legislature expressed its objective in SORNA's text, which states that SORNA's purpose is "to protect the public from potentially dangerous registrants and offenders by enhancing access to information concerning those registrants and offenders." 34-A M.R.S. § 11201 (2014). In light of this express statement of legislative intent that SORNA is civil in nature, we proceed to analyze SORNA's effects under the *Mendoza-Martinez* factors.

b.     The *Mendoza-Martinez* Factors

[¶18]  In determining whether the effects of SORNA are so punitive as to override the Legislature's stated civil intent, we use the seven factors articulated by the U.S. Supreme Court in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963), as "guideposts." *Haskell*, 2001 ME 154, ¶ 8, 784 A.2d 4. These factors are (1) "[w]hether the sanction involves an affirmative disability or restraint"; (2) "whether it has historically been regarded as a punishment"; (3) "whether it comes into play only on a finding of scienter"; (4) "whether its operation will promote the traditional aims of punishment—retribution and deterrence"; (5) "whether the behavior to which it applies is already a crime"; (6) "whether an alternative purpose to which it may rationally be connected is assignable for it"; and

(7) "whether it appears excessive in relation to the alternative purpose assigned." *Mendoza-Martinez*, 372 U.S. at 168-69.

[¶19] We have addressed the issue of whether SORNA is punitive in effect, notwithstanding the Legislature's expressed intent to create a civil sanction, in two recent cases—*Letalien* and *Williams*—both of which challenged SORNA's constitutionality on ex post facto grounds. *See Letalien*, 2009 ME 130, ¶¶ 26-63, 985 A.2d 4; *Williams*, 2013 ME 24, ¶¶ 22-51, 61 A.3d 718. These decisions are in agreement with respect to *Mendoza-Martinez* factors three through seven. *Letalien*, 2009 ME 130, ¶¶ 44-55, 985 A.2d 4; *Williams*, 2013 ME 24, ¶¶ 36-44, 61 A.3d 718. They conclude that SORNA's requirements are not triggered only upon a finding of scienter, that SORNA has a nonpunitive public safety purpose, and that the third and sixth factors thus weigh against finding SORNA punitive. *Letalien*, 2009 ME 130, ¶¶ 44, 50, 985 A.2d 4; *Williams*, 2013 ME 24, ¶¶ 36, 42, 61 A.3d 718. They treat factors four (whether SORNA promotes the traditional aims of punishment) and seven (whether SORNA is excessive in relation to its nonpunitive purpose) as neutral. *Letalien*, 2009 ME 130, ¶¶ 45-46, 55, 985 A.2d 4; *Williams*, 2013 ME 24, ¶¶ 40, 44, 61 A.3d 718. And, because the behavior to which SORNA applies is already a crime, the decisions conclude that factor five supports a finding that SORNA is punitive. *Letalien*, 2009 ME 130, ¶ 48, 985 A.2d 4; *Williams*, 2013 ME 24, ¶ 41, 61 A.3d 718.

12

[¶20]  Although their conclusions differ with respect to the first *Mendoza-Martinez* factor,[14] *Williams*, 2013 ME 24, ¶¶ 30-33, 61 A.3d 718, the pivotal issue in both decisions was the second factor—whether SORNA's requirements have historically been considered punishment.

[¶21]  In *Letalien* we considered the constitutionality of retroactively applying SORNA's amended and enhanced reporting requirements to Letalien, who had been sentenced to comply with less stringent reporting requirements under an earlier version of SORNA.  *Letalien*, 2009 ME 130, ¶¶ 5-8, 985 A.2d 4.  In analyzing whether retroactive application of SORNA's enhanced requirements was punitive, we utilized the "intent-effects" test and the *Mendoza-Martinez* factors.  *Id.* ¶¶ 30-62.  We held that application of SORNA's amended, enhanced reporting requirements to Letalien was punitive for ex post facto purposes.  *Id.* ¶ 62.

---

[14]  The first *Mendoza-Martinez* factor calls for an assessment of whether SORNA's registration requirements involve an "affirmative disability or restraint."  *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168 (1963).  When *Letalien* was decided, SORNA required registrants to report to law enforcement agencies in person every ninety days for fingerprinting, photographing, and verification of identity and location of home, school, and employment.  *Letalien*, 2009 ME 130, ¶ 37, 985 A.2d 4.  We concluded that these procedures constituted "a form of significant supervision by the state" and that the first *Mendoza-Martinez* factor therefore indicated that SORNA was punitive in effect.  *Id.*  By the time *Williams* was decided, SORNA registrants were required to report in person only once every five years.  *Doe I v. Williams*, 2013 ME 24, ¶ 31, 61 A.3d 718.  We concluded that this procedure did not constitute a significant restraint or disability and that the first *Mendoza-Martinez* factor thus weighed against finding SORNA punitive in effect.  *Id.* ¶ 33.  In this case, if SORNA's registration requirements were imposed upon Doe, the nature of his obligations would be the same as or similar to those considered in *Williams*.  *See* 34-A M.R.S. § 11222 (2014).  The registration obligations would thus fail to indicate that the sanction is punitive in effect for purposes of the first *Mendoza-Martinez* factor.  *Williams*, 2013 ME 24, ¶ 33, 61 A.3d 718.

[¶22]  The *Letalien* decision centered on our conclusion under the second *Mendoza-Martinez* factor that retroactive imposition of SORNA registration obligations has historically been regarded as punishment.  *Id.* ¶¶ 57, 59-61; *see also Williams*, 2013 ME 24, ¶ 46, 61 A.3d 718.  In analyzing the second factor, we looked to the unique history of SORNA and its incorporation into the criminal sentencing process.  *Letalien*, 2009 ME 130, ¶¶ 39, 42-43, 985 A.2d 4.  We determined that "when sex offender registration is made a part of an offender's criminal sentence, it necessarily constitutes a part of the punishment administered by the State in response to that offender's criminal conviction."[15]  *Id.* ¶ 61.  Because an order to comply with SORNA's requirements was "an integral part of the sentencing process" when Letalien was sentenced, *id.* ¶ 42, we concluded that application of SORNA's enhanced reporting requirements to him after sentencing "modified and enhanced a portion of his criminal sentence," and that this sentence enhancement was historically considered punishment, *id.* ¶ 43.

[¶23]  In *Williams*, we considered the constitutionality of retroactively applying SORNA's registration requirements to multiple defendants who were sentenced before the enactment of a sex offender registration law.  2013 ME 24,

---

[15]  *See also State v. Johnson*, 2006 ME 35, ¶¶ 12-14, 894 A.2d 489 (concluding that SORNA registration was part of Johnson's criminal sentence in 2000, and that the sentencing court's improper designation of Johnson as a sex offender rather than a sexually violent predator could only be corrected pursuant to Maine Rule of Criminal Procedure 35(a), notwithstanding the fact that SORNA registration had been removed from the sentencing process by an amendment effective in 2004).

¶ 28, 61 A.3d 718. We concluded that the retroactive application was not punitive for ex post facto purposes, *id.* ¶ 51, distinguishing our holding in *Letalien* based upon our analysis under the second *Mendoza-Martinez* factor, *id.* ¶ 35. "[SORNA] of 1995, which affected Letalien, made registration an integral part of the sentencing process and, thus, the resulting sentence. [The version of SORNA applied to the defendants in *Williams*], on the other hand, [was] not tied to the sentencing process; this is the crucial distinction upon which *Letalien* was based." *Id.* (quotation marks omitted). In light of this distinction, we determined that the second *Mendoza-Martinez* factor weighed against concluding that SORNA was punitive. *Id.*

[¶24] The instant case is closer to *Letalien* than *Williams*. When Doe was sentenced, there was a sex offender law in effect and SORNA was an "integral part of the sentencing process." *See id.* The *Williams* Court recognized this factual difference as significant and used it to distinguish Letalien from the defendants in *Williams*, who were convicted before the enactment of a sex offender law, and for whom SORNA was not part of sentencing. *Id.*

[¶25] At the time of Doe's conviction, SORNA was in effect and trial judges imposed SORNA's registration requirement as part of the sentencing process for every person convicted of a sex offense. Doe was not ordered to comply with SORNA's registration requirement at sentencing because the

Legislature had not included his crime—possession of sexually explicit material—in the list of sex offenses. *See* 34-A M.R.S.A. § 11203 (Supp. 2002).[16] If Doe's crime had been identified as a sex offense by the Legislature, the sentencing court would have ordered him to comply with SORNA's registration requirements as part of his criminal sentence.

[¶26]  When the statutory definition of sex offense was amended in September 2003, possession of sexually explicit material was retroactively added to the list of offenses with sentences that required SORNA registration. *See* P.L. 2003, ch. 371, § 2 (effective Sept. 13, 2003) (codified as amended at 34-A M.R.S.A. § 11203(6) (Supp. 2003)).[17]  After SORNA registration was removed from sentencing in 2004, *see* P.L. 2003, ch. 711, § B–13 (effective July 30, 2004), Doe received notice that he was required to register.

[¶27]  Like Letalien, Doe was convicted at a time when SORNA registration requirements were an "integral part of the sentencing process." *Letalien*, 2009 ME 130, ¶ 42, 985 A.2d 4.  Because Doe's sentence did not include a SORNA registration requirement, the later imposition of registration requirements caused his original sentence to be "modified and enhanced." *See id.* ¶ 43.

---

[16]  *See supra* n.6 (discussing later amendments to 34-A M.R.S.A. § 11203).

[17]  *See supra* n.7 (discussing later amendments to 34-A M.R.S.A. § 11203(6)).

[¶28] Each of the seven *Mendoza-Martinez* factors is relevant to the determination of whether a statute is punitive. *Id.* ¶ 32. Those factors are not subject to a "precise mathematical formulation," but rather are weighed qualitatively. *Id.* (quotation marks and internal punctuation omitted). For the reasons set out above, we conclude that in the present case, retroactive imposition of SORNA registration requirements on Doe is a sanction historically regarded as punishment, and that the second *Mendoza-Martinez* factor thus weighs in favor of finding the sanction punitive in effect. We have noted the effect of the first and the third through seventh factors as they bear on the *Mendoza-Martinez* analysis here. However, a retroactive increase in the burdens of Doe's sentence carries substantial weight in our overall analysis under the *Mendoza-Martinez* framework. Having considered all of the *Mendoza-Martinez* factors, we conclude that retroactive application of SORNA's registration requirements to Doe is punitive in effect.

2.    Lack of a Judicial Trial

[¶29] In addition to establishing that the legislative act inflicted punishment, a party challenging a statute under the Bill of Attainder Clause must prove the elements of the statute's application to a specific individual or group, and the lack of a judicial trial. *DaimlerChrysler Corp.*, 2007 ME 62, ¶ 35, 922 A.2d 465. The imposition of punishment without trial "violates fundamental constitutional

principles" because it allows the legislature to "circumvent[] the judicial process." *Doe v. Weld*, 954 F.Supp. 425, 430 (D. Mass. 1996) (quotation marks omitted).

[¶30]  Here, the duty to comply with SORNA was clearly imposed on Doe without a judicial trial.  Doe did not have a trial but he did plead guilty to one charge of possession of sexually explicit material.  After that plea, which resulted in his conviction, Doe was sentenced, but his sentence did not include a registration obligation because, at the time Doe was sentenced, the Maine Legislature had not deemed his crime to be a sex offense.  The legislative amendment to SORNA that purported to change Doe's sentence by imposing registration obligations on him occurred without a judicial determination that Doe was a sex offender and without a judicial order incorporating the registration obligation into his criminal sentence.

3.    Specificity

[¶31]  In light of our conclusions that the imposition of SORNA registration obligations on Doe resulted in a punitive enhancement of his sentence, and that this enhancement occurred without a judicial trial, we consider the third element of a bill of attainder—that is, the law's application to a specific individual or group. The element of specificity is not established by proof that a statute merely imposes punishment on some persons or groups, but also requires proof that certain persons

18

or groups are selected based on their irreversible prior conduct. *Roe v. Farwell*, 999 F.Supp. 174, 193 (D. Mass. 1998).

[¶32] The record indicates that the SORNA amendment in question may have targeted a specific group based on its members' prior conduct. If it did, application of the amendment to members of that group violates the Bill of Attainder Clause because it legislatively enhances their sentences. The trial court concluded that SORNA is not punitive and it denied Doe's bill of attainder claim without addressing the issue of specificity. Because the record does not contain any factual findings or stipulations concerning specificity, we must remand for further consideration of this issue.

C. Conclusion

[¶33] The Bill of Attainder Clause "does not preclude a State from making reasonable categorical judgments that a conviction of specified crimes should entail particular regulatory consequences." *Smith v. Doe*, 538 U.S. 84, 103 (2003). It does, however, preclude the legislature from imposing punishment on an individual or group in circumvention of the judicial process. Because the SORNA amendment at issue here imposes punishment outside of the judicial process, and because the trial court did not address the element of specificity, we vacate the judgment and remand to the trial court for further consideration.

The entry is:

> Judgment vacated.  Remanded to the trial court for further consideration.

---

**On the briefs:**

Bruce M. Merrill, Esq., Bruce M. Merrill, P.A., Portland, for appellant John Doe XLVI

Janet T. Mills, Attorney General, Paul Stern, Dep. Atty. Gen., and Laura Yustak Smith, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellees Stephanie Anderson et al.

**At oral argument:**

Bruce M. Merrill, Esq., for appellant John Doe XLVI

Laura Yustak Smith, Asst. Atty. Gen., for appellees Stephanie Anderson et al.

Kennebec County Superior Court docket number CV-2012-124
For Clerk Reference Only