MAINE SUPREME JUDICIAL COURT                           Reporter of Decisions
Decision:     2020 ME 107
Docket:       Lin-19-179
Argued:       June 24, 2020
Decided:      August 13, 2020

Panel:        MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.

## STATE OF MAINE

v.

## CRAIG A. PROCTOR

HORTON, J.

[¶1]  Craig A. Proctor appeals from a judgment of conviction for failure to comply with the Sex Offender Registration and Notification Act of 1999 (SORNA of 1999) (Class C), 34-A M.R.S. § 11227(2) (2020), entered by the trial court (Lincoln County, *Dobson, J.*) following a bench trial.  Proctor argues that, due to inadequate representation by his trial counsel, the court committed obvious error by not addressing the constitutionality of SORNA of 1999, 34-A M.R.S. §§ 11202-11256 (2020), as retroactively applied to him.[1]

---

[1]  In *State v. Letalien,* we concluded "that the determination of the constitutionality of the retroactive application of SORNA of 1999 depends on a facial examination of the statute, and not on an as-applied analysis," and therefore "that the statute imposes an ex post facto punishment as to offenders sentenced in the years before [its] effective date . . . for whom registration was a required part of their sentence and who were subsequently made subject to the more burdensome requirements of SORNA after its effective date of September 18, 1999."  *State v. Letalien*, 2009 ME 130, ¶ 1, 985 A.2d 4; *see Doe v. Anderson*, 2015 ME 3, ¶ 1 n.2, 108 A.3d 378.

[¶2]  We vacate the trial court's judgment for obvious error because we are unable to conclude beyond a reasonable doubt that the lifetime registration requirement that resulted from the retroactive application of SORNA of 1999 to Proctor's 1992 conviction for gross sexual assault was not an unconstitutional punitive enhancement of his sentence.

## I.  BACKGROUND

[¶3]  Viewing the evidence in the light most favorable to the State, the following facts are supported by the trial record.  *See State v. Asante,* 2020 ME 90, ¶ 2, --- A.3d ---.  Proctor is a convicted sex offender.  In October 1990, Proctor was convicted of four counts of unlawful sexual contact, 17-A M.R.S.A. § 255 (Supp. 1990).[2]  He was sentenced to five years' imprisonment, with all but one year suspended and four years' probation.  In November 1992, he was convicted of gross sexual assault, 17-A M.R.S.A. § 253 (Supp. 1992).[3]  He was sentenced to ten years' imprisonment, with all but five years suspended and four years' probation.[4]

---

[2]  Title 17-A M.R.S.A. § 255 (Supp. 1990) has since been repealed and the offense of unlawful sexual contact has been re-codified in its current location at 17-A M.R.S. § 255-A (2020).  P.L. 2001, ch. 383, § 22 (effective Jan. 31, 2003).

[3]  Title 17-A M.R.S.A. § 253 (Supp. 1992) has since been amended numerous times but not in any way relevant to this appeal.  *See, e.g.,* P.L. 2019, ch. 494, § 1 (effective Sept. 19, 2019).

[4]  The State mentioned during sentencing that Proctor has a third sex offense conviction.  The record, however, does not include any evidence of a third conviction.

[¶4]  Proctor's sentence for his October 1990 conviction did not include any requirement that he register as a sex offender because the sentencing occurred before the first sex offender registration law, the Sex Offender Registration Act (SORA of 1991), was enacted in Maine.  *See* P.L. 1991, ch. 809, § 1 (effective June 30, 1992) (codified at 34-A M.R.S.A. §§ 11001-11004 (Supp. 1992));[5] *State v. Letalien*, 2009 ME 130, ¶ 4, 985 A.2d 4.

[¶5]  SORA of 1991 did apply to Proctor's 1992 sentence for gross sexual assault, but the sentence imposed did not require him to register as a sex offender.  The record is silent as to why the 1992 sentence did not require registration.  SORA of 1991 required the court to impose sex offender registration as part of the sentence but permitted the court to waive the requirement for "good cause."  34-A M.R.S.A. § 11003(4)(D) (Supp. 1992); *see Letalien,* 2009 ME 130, ¶ 4, 985 A.2d 4.  An identical sentencing waiver provision was also included in a subsequent version of the sex offender registration statute, the Sex Offender Registration and Notification Act of 1995 (SORNA of 1995).  *See* P.L. 1995, ch. 680, § 13 (effective July 4, 1996) (codified

---

[5]  Because the Legislature has replaced or amended various versions of the sex offender registration statutes since 1991, the statutory citations in this opinion are to the versions of the statutes as of the date of their enactment.

at 34-A M.R.S.A. § 11121(6)(D) (Supp. 1996)); *Letalien*, 2009 ME 130, ¶ 4, 985 A.2d 4.

[¶6] In 1999, the Legislature enacted SORNA of 1999. P.L. 1999, ch. 437, § 2 (effective Sept. 18, 1999); *see Letalien*, 2009 ME 130, ¶ 6, 985 A.2d 4. This statute applied to a greater variety of offenses and "imposed requirements on registrants that were more demanding than those of the prior versions of the sex offender statutes." *Letalien*, 2009 ME 130, ¶ 6, 985 A.2d 4. Specifically, SORNA of 1999 categorized offenders into two groups: "sex offenders" and "sexually violent predators." *Id.* (alterations omitted) (quotation marks omitted); *see* 34-A M.R.S.A. § 11225(1)-(2) (Pamph. 1999). "Sex offenders" were required to register for ten years, and "sexually violent predators" were required to register for life. *Letalien*, 2009 ME 130, ¶ 6, 985 A.2d 4 (alterations omitted). Individuals convicted of gross sexual assault were categorized as "sexually violent predator[s]" and were required to register for life.[6]

---

[6] The current version of SORNA of 1999 categorizes registrants as "[t]en-year registrant[s]" or "[l]ifetime registrant[s]." 34-A M.R.S. § 11203(5), (8) (2020). "Ten-year registrant[s]" are individuals convicted and sentenced for committing a "sex offense" defined by statute as encompassing certain offenses. 34-A M.R.S. § 11203(5); *see* 34-A M.R.S. § 11203(6)-(6-B) (2020) "Lifetime registrant[s]" are individuals convicted and sentenced for committing either a "[s]exually violent offense" or a "[s]ex offense when the person has another conviction for or an attempt to commit an offense that includes the essential elements of sex offense or sexually violent offense." 34-A M.R.S. § 11203(8); *see* 34-A M.R.S. § 11203(7) (2020).

34-A M.R.S.A. § 11225(2) (Pamph. 1999); *see also* 34-A M.R.S. § 11203(8)(A) (2020).

[¶7]  By virtue of his November 1992 conviction for gross sexual assault, Proctor became subject to SORNA of 1999's lifetime registration requirements as a result of a 2001 amendment "that made the law apply retroactively to all persons sentenced for sex offenses or sexually violent offenses on or after June 30, 1992, and before September 18, 1999."  *Letalien*, 2009 ME 130, ¶ 7, 985 A.2d 4; *see* P.L. 2001, ch. 439, § OOO-7 (effective Sept. 21, 2001) (codified at 34-A M.R.S.A. § 11202 (Pamph. 2001)); *see also* P.L. 2001, ch. 439, §§ OOO-10 to OOO-12 (codified at 34-A M.R.S.A. §§ 11203(8), 112222(2-A), 11225(1) (Pamph. 2001)).  The same amendment repealed SORA of 1991 and SORNA of 1995 in their entirety. *See* P.L. 2001, ch. 439, § OOO-5 (effective Sept. 21, 2001); *see Letalien*, 2009 ME 130, ¶ 7, 985 A.2d 4.

[¶8] Proctor's 1990 conviction of unlawful sexual contact became subject to SORNA of 1999 as a result of 2005 legislation that amended SORNA of 1999 "to apply retroactively to all sex offenders sentenced on or after January 1, 1982."  *Doe v. Williams*, 2013 ME 24, ¶ 3, 61 A.3d 718; *see* P.L. 2005, ch. 423, § 1 (effective Sept. 17, 2005) (codified at 34-A M.R.S. § 11202(1) (2005)).

[¶9]  In 2009, after our decision in *Letalien,* the Legislature amended SORNA of 1999 to include exceptions to the registration requirements for certain offenders who were sentenced on or after January 1, 1982, and before June 30, 1992.  *See* P.L. 2009, ch. 365, § B-3 (effective Sept. 12, 2009) (codified at 34-A M.R.S. § 11202-A(1)(2009)); *Williams*, 2013 ME 24, ¶ 4, 61 A.3d 718. "Sex offenders fall within the exception if, among other criteria, their underlying convictions did not include more than one Class A sex offense or sexually violent offense, they had no prior sex offense convictions, and they had no subsequent convictions for crimes punishable by imprisonment of one year or more."  *Williams*, 2013 ME 24, ¶ 4, 61 A.3d 718.  This exemption from registering, however, did not apply to Proctor because of his two sex offense convictions; he remained a lifetime registrant.  *See* 34-A M.R.S. 11202-A(1)(C) (2020).

[¶10]  In May 2018, Proctor moved his camper to a friend's property in Dresden and began to work on the property.  He did not notify the local sheriff's office of his change of residence or work address.  *See* 34-A M.R.S. § 11222(1-B) (2020).  In September 2018, he was interviewed by a detective from the Lincoln County Sheriff's Office about his failure to comply with the sex offender registration statute.

[¶11]  In November of 2018, Proctor was indicted on one count of failure to comply with a duty under SORNA of 1999 (Class C), 34-A M.R.S. § 11227(2). In April 2019, the court conducted a one-day bench trial.  Proctor did not raise any challenge to the retroactive applicability of SORNA of 1999, as amended, and the court did not raise the issue sua sponte.  The primary contested issue was whether Proctor had notice of the requirement to notify a local law enforcement agency of a change of residence or work address.  *See* 34-A M.R.S. § 11222(1-B).  The court found Proctor guilty and sentenced him to ninety days' imprisonment.  Proctor appealed the judgment, and the execution of sentence was stayed pending appeal.

## II.  DISCUSSION

[¶12]  Proctor contends that, because his original sentences did not include any registration requirement, the retroactive application of SORNA of 1999 to require him to register for life increases the punitive burden of his sentences and therefore violates the prohibitions against ex post facto laws found in both the United States and Maine Constitutions.  *See* U.S. Const. art. I, § 10, cl. 1; Me. Const. art. I, § 11.

[¶13]  Because the constitutionality of the retroactive application of SORNA of 1999 was not raised at trial, we will review the record only for

obvious error. *See State v. Burdick*, 2001 ME 143, ¶ 13, 782 A.2d 319. We will vacate a conviction based on obvious error only if the error "affects substantial rights or results in a substantial injustice." *Id.* ¶ 29 (quotation marks omitted). When the alleged error is of a constitutional dimension, as in this case, we will affirm only if we are convinced beyond a reasonable doubt that the error did not affect the defendant's substantial rights. *Id.*

[¶14]  The United States Constitution states, "No State shall . . . pass any . . . ex post facto Law."  U.S. Const. art. I, § 10, cl. 1.  The Maine Constitution similarly provides, "The Legislature shall pass no . . . ex post facto law." Me. Const. art. I, § 11.  "[T]he ex post facto clauses of the Maine and United States Constitutions are interpreted similarly and are coextensive, and a statute violates the prohibition against ex post facto laws if it: (1) punishes as criminal an act that was not criminal when done, (2) makes more burdensome the punishment for a crime after it has been committed, or (3) deprives the defendant of a defense that was available according to law at the time the act was committed." *Letalien*, 2009 ME 130, ¶ 25, 985 A.2d 4.  To analyze whether SORNA of 1999 violates the prohibition against ex post facto laws, we use the "intent/effects" framework.  *Id.* ¶ 29 (quotation marks omitted); *see Doe v. Anderson*, 2015 ME 3, ¶ 15, 108 A.3d 378.

[¶15]   To identify punishment under this test, "we first construe the statute to determine whether the [L]egislature intended its provisions to be civil or criminal."  *Anderson*, 2015 ME 3, ¶ 16, 108 A.3d 378.  If the Legislature intended "to create a civil statute, we then consider, notwithstanding the [L]egislature's stated intent, whether the statute's purposes or effects are so punitive as to override the [L]egislature's stated intent."  *Id*.

[¶16]   Here, the Legislature expressed that the purpose of SORNA of 1999 is "to protect the public from potentially dangerous registrants and offenders by enhancing access to information concerning those registrants and offenders."  34-A M.R.S. § 11201 (2020).  Furthermore, in 2003, the Legislature amended SORNA of 1999 to provide that the sentencing court is to order compliance with SORNA "[a]t the time" of sentencing instead of "[a]s part of" a sentence.  *See* P.L. 2003, ch. 711, § B-13 (effective July 30, 2004).  By contrast, pursuant to SORA of 1991 and SORNA of 1995, "sex offender registration was an integral part of the sentencing process and, thus, the resulting sentence." *Letalien*, 2009 ME 130, ¶ 42, 985 A.2d 4.  One result of the 2003 amendment was that sex offender registration was no longer tied to sentencing.  *See Anderson*, 2015 ME 3, ¶ 6, 108 A.3d 378.  In light of this and other provisions of SORNA of 1999, we have held that the intent of SORNA of 1999, as amended, is

10

civil and regulatory in nature.[7]  *See Anderson*, 2015 ME 3, ¶ 6, 108 A.3d 378; *Letalien*, 2009 ME 130, ¶ 30, 985 A.2d 4.

[¶17]   We have previously addressed the "effects" component of the ex post facto analysis of SORNA of 1999.  *See Anderson,* 2015 ME 3, ¶¶ 18-28, 108 A.3d 378*; Williams*, 2013 ME 24, ¶¶ 22-51, 61 A.3d 718; *Letalien*, 2009 ME 130, ¶¶ 35-62, 985 A.2d 4.

[¶18]   In *Letalien*, we examined the constitutionality of retroactively applying SORNA of 1999's enhanced reporting requirements to a defendant who had been sentenced to comply with less strict registration and reporting requirements under SORA of 1991 and SORNA of 1995.  2009 ME 130, ¶¶ 5-8, 985 A.2d 4.  We determined that "when sex offender registration is made a part of an offender's criminal sentence, it necessarily constitutes a part of the

---

[7] Based on the civil nature of SORNA of 1999, we have applied the seven factors articulated by the United States Supreme Court in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963), to determine whether the effects of SORNA are so punitive as to overcome the civil intent of the statute.  *See Anderson*, 2015 ME 3, ¶ 18, 108 A.3d 378; *Letalien*, 2009 ME 130, ¶ 29, 985 A.2d 4.  These factors are

> [w]hether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned.

*Mendoza-Martinez,* 372 U.S. at 168-69 (footnotes omitted); *see Letalien*, 2009 ME 130, ¶ 31, 985 A.2d 4.

punishment administered by the State in response to that offender's criminal conviction." *Id.* ¶ 61.

[¶19]    In *Letalien*, applying enhanced reporting and registration requirements to the offender—after sentencing—"modified and enhanced a portion of his criminal sentence," and, therefore, this was a punishment. *Id.* ¶ 43.    This same analysis was used in *Anderson* to come to a similar conclusion that "retroactive application of SORNA's registration requirements to [the defendant was] punitive in effect" because the defendant was not required to register at the time of sentencing. *Anderson*, 2015 ME 3, ¶¶ 25-28, 108 A.3d 378.

[¶20]  By contrast, in *Williams*, we concluded that SORNA of 1999 could be constitutionally applied to sex offenders sentenced before the enactment of SORA of 1991 because their sentences were not subject to any sex offender registration statutes and, therefore, the retroactive application of SORNA of 1999 did not modify their sentences.  2013 ME 24, ¶¶ 34-35, 61 A.3d 718. Also, we concluded that the 2009 ameliorative legislation addressed "some of the most significant concerns we had in *Letalien*."[8]  *Id.* ¶ 46.

---

[8]  In *Letalien,* the concurrence took issue with the majority's view that the retroactive application of SORNA of 1999 to persons sentenced before SORA of 1991 took effect did not result in an unconstitutional modification of their sentences.  2009 ME 130, ¶ 73, 985 A.2d 4 (Silver, J., concurring) ("I disagree with the Court's suggestion, set forth in its discussion of the

12

[¶21]  Several guiding principles can be distilled from these precedents. First, the ex post facto analysis by definition calls for constitutionality to be determined on the face of the law at issue.  *See Letalien,* 2009 ME 130, ¶¶ 33-34, 985 A.2d 4.

[¶22]  Second, SORNA of 1999, as amended, is facially constitutional.  *See Williams*, 2013 ME 24, ¶ 51, 61 A.3d 718; *Letalien,* 2009 ME 130, ¶ 34, 985 A.2d 4.  On the other hand, the law's facial constitutionality does not mean it can be applied retroactively in every case.  *See Anderson,* 2015 ME 3, ¶ 1 n.2, 108 A.3d 378; *Letalien,* 2009 ME 130, ¶ 63, 985 A.2d 4.

[¶23]  Finally, the primary limitation on retroactive application of SORNA of 1999 is that it cannot result in a punitive alteration of sentences imposed at a time when sex offender registration was tied to sentencing.  *See Letalien,* 2009 ME 130, ¶ 43, 985 A.2d 4.  In *Letalien*, we held that

> the retroactive application of the lifetime registration requirement and quarterly in-person verification procedures of SORNA of 1999 to offenders originally sentenced subject to SORA of 1991 and SORNA of 1995, without, at a minimum, affording those offenders any opportunity to ever be relieved of the duty as was permitted under those laws, is punitive.  As to these offenders, the retroactive application of SORNA of 1999 is an unconstitutional ex post facto law because it makes more burdensome the punishment for a crime after its commission.

*Mendoza-Martinez* factors, that a distinction should be drawn between a burden imposed as part of a sentence and one imposed as a regulatory requirement parallel to sentencing.").

*Id.* ¶ 62 (quotation marks omitted).

[¶24]  Proctor's case is closer to *Letalien* and *Anderson* than to *Williams*. When Proctor was sentenced in 1990 and 1992, he was not required to register. His 1990 sentencing occurred before the enactment of Maine's first sex offender registration statute, SORA of 1991.  His 1992 sentencing was subject to SORA of 1991.  Under both SORA of 1991 and SORNA of 1995, "sex offender registration was an integral part of the sentencing process and, thus, the resulting sentence."[9]  *Letalien,* 2009 ME 130, ¶ 42, 985 A.2d 4; *accord Williams*, 2013 ME 24, ¶ 35, 61 A.3d 718.

[¶25]  Proctor's 1992 sentence differs from the sentence in *Letalien* in that Letalien's sentence required him to register as a sex offender for fifteen years, *see Letalien*, 2009 ME 130, ¶ 5, 985 A.2d 4, whereas Proctor's sentence did not require any registration, possibly because the sentencing court found "good cause" pursuant to SORA of 1991 to waive the otherwise mandatory registration requirement, 34-A M.R.S.A. § 11003(4)(D) (Supp. 1992).  Still, because sex offender registration was a component of sentencing at the time of

---

[9]  In *Letalien,* we explained our view that SORA of 1991 tied registration to sentencing as follows: "SORA of 1991 did not state specifically that compliance with its requirements was to be made a part of an offender's criminal sentence, but it did provide that a sentencing court could, for good cause shown, waive the registration requirement." *Letalien,* 2009 ME 130, ¶ 4, 985 A.2d 4; *see* 34-A M.R.S.A. § 11003(4)(D) (Supp. 1992).

14

Proctor's 1992 conviction, the effect of applying SORNA of 1999 to Proctor's 1992 conviction appears to be a retroactive enhancement of the burden of the sentence imposed, to an even greater extent than occurred in *Letalien*. If so, such a retroactive enhancement of the burden of his sentence is a sanction historically regarded as punishment.[10] *See Anderson*, 2015 ME 3, ¶ 28, 108 A.3d 378.

[¶26] Furthermore, although the ameliorative provisions of SORNA of 1999 were enacted in 2009 to mitigate the punitive elements of the law, *see* 34-A M.R.S. § 11202-A(1), these provisions apparently do not benefit Proctor. Pursuant to the law, Proctor still had to register for life because he had two qualifying convictions. *See* 34-A M.R.S. § 11202-A(1).

[¶27] On review for obvious error, the question is whether we can say beyond a reasonable doubt that the retroactive application of SORNA of 1999 to Proctor's 1990 and 1992 convictions does not affect his substantial rights by

---

[10] The retroactive application of SORNA of 1999 to Proctor's 1990 conviction for unlawful sexual contact did not modify his sentence, at least in a direct sense, because his sentence could not have included a duty to register, there being no sex offender registration statute in effect at the time. In that regard, his 1990 conviction may place Proctor in a position similar to the registrants in *Doe v. Williams*, 2013 ME 24, ¶¶ 2, 28, 46, 61 A.3d 718. On the other hand, Proctor's conviction for unlawful sexual contact does not in itself trigger a lifetime registration requirement under SORNA of 1999, as amended, *see* 34-A M.R.S. §§ 11203(6), (8), and we cannot say beyond a reasonable doubt that Proctor's registration obligation associated with his 1990 conviction still would have been in effect as of 2018.

virtue of a punitive alteration of his original sentences. *See Anderson*, 2015 ME 3, ¶ 28, 108 A.3d 378; *Burdick*, 2001 ME 143, ¶ 29, 782 A.2d 319.

[¶28] Because Proctor's trial counsel failed to bring any of these circumstances to the trial court's attention, and as a result the trial court did not explore them, the limited record before us does not enable us to answer that question in the negative beyond a reasonable doubt. *See Burdick*, 2001 ME 143 at ¶ 13, 782 A.2d 319. Therefore, we vacate the conviction and remand for further proceedings.[11]

[¶29] On the other hand, because the issue of retroactive application was undeveloped in the trial court and the record is therefore silent or equivocal in relevant areas, including whether Proctor's sex offender registration obligation resulting from his 1990 conviction still would have been in effect as of the alleged date of offense, the present record does not enable us to conclude that the underlying charge must be dismissed. The further proceedings on remand may include a pretrial hearing on the status of Proctor's sex offender registration obligation as of the alleged date of offense, or a new trial, or both.

The entry is:

> Judgment vacated. Remanded for further proceedings consistent with this opinion.

---

[11] This outcome obviates the need to address Proctor's other contentions.

Craig A. Proctor, appellant pro se

Lawrence C. Winger, Esq. (orally), Portland, for appellant Craig A. Proctor

Natasha C. Irving, District Attorney (orally), and Michael B. Dumas, Asst. Dist. Atty., Prosecutorial District VI, Bath, for appellee State of Maine

Lincoln County Unified Criminal Docket docket number CR-2018-622
FOR CLERK REFERENCE ONLY