MAINE SUPREME JUDICIAL COURT                           Reporter of Decisions
Decision:      2026 ME 4
Docket:        Ken-24-482
Argued:        May 8, 2025
Decided:       January 22, 2026

Panel:         STANFILL, C.J., and MEAD, CONNORS, LAWRENCE, DOUGLAS, and LIPEZ, JJ., and
               HORTON, A.R.J.*
Majority:      MEAD, LAWRENCE, DOUGLAS, and LIPEZ, JJ., and HORTON, A.R.J.
Dissent:       STANFILL, C.J., and CONNORS, J.

STATE OF MAINE

v.

DANIEL GANTNIER

HORTON, A.R.J.

[¶1]  Daniel Gantnier appeals from a judgment of conviction for failure to comply with the Sex Offender Registration and Notification Act of 1999 ("SORNA of 1999") (Class D), 34-A M.R.S. § 11227(1) (2025), entered by the trial court (Kennebec County, *Davis, C.J.*) on Gantnier's conditional guilty plea. In 2006, after a jury found him guilty of a sex offense, Gantnier was erroneously ordered to register under SORNA of 1999 for a term of ten years, when SORNA of 1999 required persons convicted of that offense to register for life.  After

---

\* Justice Horton sat at oral argument and participated in the initial conference while he was an Associate Justice and, as directed and assigned by the Chief Justice, is now participating in this appeal as an Active Retired Justice.

2

Gantnier had completed the ten-year term, the State Bureau of Identification (SBI) corrected the error and notified him that he must register for life. Gantnier argues that the retroactively imposed lifetime registration requirement violates the federal Ex Post Facto Clause, U.S. Const. art. I, § 10, cl. 1.[1] We conclude that there is no constitutional impediment to the correction of Gantnier's SORNA of 1999 registration obligation and affirm the judgment.

## I. BACKGROUND

[¶2] The following facts were found by the court in its April 30, 2024, order denying Gantnier's motion to dismiss. *See State v. Beaulieu*, 2025 ME 4, ¶¶ 2, 9, 331 A.3d 280. The facts are supported by the record. *See id.*

[¶3] In January 2006, Gantnier was found guilty by a jury of one count of unlawful sexual contact (Class C), 17-A M.R.S. § 255-A(1)(E) (2025).[2] In May 2007, the court (Waldo County, *Studstrup, J.*) entered a judgment of conviction and imposed a sentence on Gantnier. According to the judgment and

---

[1] In addition to his argument under the federal Ex Post Facto Clause, Gantnier argues that the State violated the federal Double Jeopardy Clause, U.S. Const. amend. V, by imposing additional burdens under SORNA of 1999 after he was sentenced and after his original ten-year registration term elapsed. However, the Double Jeopardy Clause applies only if a court's imposition of the original registration obligation was punitive. *See State v. George*, 1997 ME 2, ¶ 6, 687 A.2d 958; *United States v. Ursery*, 518 U.S. 267, 274 (1996)). Because we conclude that the court's imposition of the original registration obligation was not punitive, *see infra* ¶ 23, we see no basis for Gantnier's argument under the Double Jeopardy Clause and do not discuss it further.

[2] Although this version of 17-A M.R.S. § 255-A(1) incorporates amendments that took effect after Gantnier was convicted, *see, e.g.*, P.L. 2023, ch. 280, §§ 3, 4 (effective Oct. 25, 2023) (codified at 17-A M.R.S. § 255-A(1)(A), (B) (2025)), the amendments did not affect paragraph E.

commitment form, the court sentenced Gantnier to serve thirty months in prison, with all but thirteen months suspended, followed by four years of probation.[3]

[¶4]  In a separate section of the judgment and commitment form, the court checked a box that required Gantnier to register as a sex offender under SORNA of 1999, 34-A M.R.S. § 11201-11256 (2007).[4]  Although Gantnier's conviction for unlawful sexual contact obligated him by statute to register as a sex offender for life, *see* 34-A M.R.S. § 11203(7), (8) (2007), the checked box on the judgment and commitment form ordered only a ten-year period of registration.  The exact language on the judgment and commitment form reads:

> IT IS ORDERED THAT THE DEFENDANT, HAVING BEEN CONVICTED OF AN OFFENSE THAT REQUIRES COMPLIANCE WITH THE SEX OFFENDER REGISTRATION AND NOTIFICATION ACT AS A 10-YEAR REGISTRANT . . . MUST SATISFY ALL REQUIREMENTS IN THE SEX OFFENDER REGISTRATION & NOTIFICATION ACT.  THE DEFENDANT MUST SUBMIT TO THE TAKING OF FINGERPRINTS AND A PHOTOGRAPH AS SPECIFIED IN THE NOTICE OF DUTY TO REGISTER.

---

[3]  In *State v. Gantnier*, 2008 ME 40, 942 A.2d 1191, we affirmed Gantnier's conviction after he challenged the court's jury instructions on appeal.

[4]  We cite the statutes in effect when Gantnier was ordered to register as a sex offender in 2007 but note that amendments enacted after that time generally do not affect the outcome of this appeal. *See, e.g.*, P.L. 2015, ch. 280, § 6 (effective Oct. 15, 2015) (codified at 34-A M.R.S. § 11222(4-C) (2025)). As one important exception, a 2009 amendment to SORNA of 1999 allowing for the correction of erroneously assigned registration terms is relevant here because Gantnier challenges whether this amendment retroactively applies to erroneous registration terms assigned before the amendment took effect. *See* P.L. 2009, ch. 365, §§ B-15, B-22 (effective Sept. 12, 2009, retroactive to Jan. 1, 1982) (codified at 34-A M.R.S. § 11222(1) (2025)).

(Citation omitted.)

[¶5]  On February 15, 2019, Gantnier received a letter from the Maine Department of Public Safety informing him that, pursuant to a 2009 amendment to SORNA, *see* P.L. 2009, ch. 365, §§ B-15, B-22 (effective Sept. 12, 2009, retroactive to Jan. 1, 1982) (codified at 34-A M.R.S. § 11222(1) (2025)), the SBI had corrected his registration term to extend for life.  After receiving the letter, Gantnier did not comply with sex offender registration requirements. In 2022, the State charged Gantnier by complaint with failure to comply with SORNA of 1999 (Class D), 34-A M.R.S. § 11227(1).  Gantnier initially pleaded not guilty.  On June 28, 2023, he filed a motion to dismiss the complaint.

[¶6]  In support of his motion, Gantnier argued that the imposition of a lifetime registration requirement under SORNA of 1999 violated the ex post facto provisions of the United States and Maine Constitutions, U.S. Const. art. I, § 10, cl. 1; Me. Const. art. I, § 11,[5] because the State retroactively enhanced a portion of his sentence by applying the 2009 amendment of 34-A M.R.S. § 11222(1) to his case.  Citing *State v. Johnson*, 2006 ME 35, ¶ 14, 894 A.2d 489,

---

[5]  Although Gantnier has contended that the retroactive modification of his SORNA of 1999 registration obligation violates the Maine Constitution's Ex Post Facto Clause, we do not apply the primacy approach to review the state constitutional issue because Gantnier did not present "an independent analysis of [article 1, section 11] of the Maine Constitution."  *State v. Norris*, 2023 ME 60, ¶ 52, 302 A.3d 1.

Gantnier further stressed that the State failed to file a timely motion under M.R.U. Crim. P. 35(a) to correct an illegal sentence, which he viewed as the State's only available remedy.

[¶7]  The court (*Daniel Mitchell, J.*) held a hearing on Gantnier's motion to dismiss and denied the motion in a written order entered on April 30, 2024.  As to Gantnier's argument under the federal Ex Post Facto Clause, the court referenced our decisions in *State v. Letalien*, 2009 ME 130, ¶¶ 61-63, 985 A.2d 4, and *State v. Proctor*, 2020 ME 107, ¶ 16, 237 A.3d 896, and reasoned that the federal Ex Post Facto Clause precludes the retroactive enhancement of penalties only when they are part of a defendant's sentence.  In light of a 2004 amendment to SORNA of 1999, P.L. 2003, ch. 711, § B-13 (effective July 30, 2004) (codified at 17-A M.R.S. § 1152(2-C) (Supp. 2004)[6]), *repealed by* P.L. 2019, ch. 113, § A-1 (emergency, effective May 16, 2019), the court determined that Gantnier's SORNA of 1999 registration duty stood apart from sentencing "as a separate form of regulatory disability."  As a result, it concluded that Gantnier's protections under the Ex Post Facto Clause did not warrant the complaint's dismissal.  The court similarly disagreed with

---

[6] The amended statute provided, "At the time the court imposes a sentence, the court shall order every natural person convicted of a sex offense or a sexually violent offense . . . to satisfy all requirements set forth in the Sex Offender Registration and Notification Act of 1999."  17-A M.R.S. § 1152(2-C).

Gantnier's contention that the State needed to proceed under Rule 35(a) to correct the term of Gantnier's SORNA of 1999 registration requirement. Although it accepted that Rule 35(a) was the exclusive means for correcting an erroneous sentence, it determined that SORNA of 1999 registration obligations were not considered part of a defendant's sentence at the time of Gantnier's sentencing. *See Johnson*, 2006 ME 35, ¶ 14, 894 A.2d 489.

[¶8] Following the denial of his motion to dismiss, Gantnier filed a motion for reconsideration, making many of the same arguments. On July 12, 2024, the court held a hearing on Gantnier's motion for reconsideration. It did not hear any testimony and considered only the parties' oral arguments. On July 25, 2024, the court denied the motion for reconsideration, again concluding that, because SORNA of 1999 registration was "no longer tied to sentencing," *Proctor*, 2020 ME 107, ¶ 16, 237 A.3d 896, Rule 35(a) was inapplicable, and that the State was authorized to correct Gantnier's classification under 34-A M.R.S. § 11222(1). Gantnier appealed from the court's decision, and we dismissed the appeal as interlocutory.

[¶9] On October 10, 2024, Gantnier entered a conditional guilty plea. *See* M.R.U. Crim. P. 11(a)(2). Pursuant to his plea agreement with the State, he reserved the right to challenge the court's denial of his motion to dismiss. *Id.*

The court (*Davis, C.J.*) entered a judgment of conviction on October 22, 2024. Gantnier filed a timely notice of appeal to this Court. *See* 15 M.R.S. § 2111(1) (2025); M.R. App P. 2B(b)(1).

## II. DISCUSSION

[¶10]   Gantnier acknowledges that his 2006 conviction should have required him to register for life and does not dispute the finding by the trial court (*Daniel Mitchell, J.*) that the sentencing court "erroneously checked the box indicating that Mr. Gantnier was a ten-year registrant under SORNA [of 1999], rather than a lifetime registrant."   Nonetheless, he argues that 34-A M.R.S. § 11222(1), the statute allowing for the correction of errors in SORNA of 1999 registration orders, is unconstitutional as applied to him under the United States Constitution's prohibition on ex post facto legislation. *See* U.S. Const. art. I, § 10, cl. 1.

[¶11]   "We review challenges to the constitutionality of a statute de novo." *Doe v. Anderson*, 2015 ME 3, ¶ 11, 108 A.3d 378.  The Ex Post Facto Clause of the United States Constitution states, "No State shall . . . pass any . . . ex post facto Law," U.S. Const. art. I, § 10, cl. 1.  We begin by reviewing the statutory history of SORNA of 1999 and then turn to case law addressing the constitutionality of its retroactive application under the Ex Post Facto Clause.

8

## A. The Statutory History of SORNA

[¶12]   As we explained in *Letalien*, SORNA of 1999 is "a result of . . . legislative efforts to develop and refine an effective process for the registration of sex offenders in Maine."  2009 ME 130, ¶ 27, 985 A.2d 4.  The first version of a statute requiring sex offenders to register was enacted in 1992.  *See* P.L. 1991, ch. 809, § 1 (effective June 30, 1992) (codified at 34-A M.R.S.A. §§ 11001-11004 (Supp. 1992)).  It was titled the Sex Offender Registration Act (SORA of 1992)[7] and applied to offenders sentenced from June 30, 1992, to August 31, 1996. *Letalien*, 2009 ME 130, ¶ 4, 985 A.2d 4.  SORA of 1992 required a "[s]ex offender," defined as "an individual convicted of gross sexual assault if the victim had not attained the age of 16 years at the time of the crime," to register and update the registrant's address in state databases for fifteen years from either the date of the registrant's discharge from incarceration or—if no incarceration was imposed—the date of the registrant's sentencing. 34-A M.R.S.A. §§ 11002(2), 11003(1) (Supp. 1992). Under SORA of 1992, courts could waive the registration requirement if the individual showed good cause. *Id.* § 11003(4)(D).

---

[7] We depart from the shorthand used in *Letalien* insofar as we refer to the different versions of the registration acts by the year in which each respective version took effect, rather than the year in which the Legislature passed the version.

[¶13]  The first comprehensive set of amendments to SORA took effect in 1996.  *See* P.L. 1995, ch. 680, § 13 (effective July 4, 1996) (codified at 34-A M.R.S.A. §§ 11101-11144 (Supp. 1996)).  The amended act was called the Sex Offender Registration and Notification Act (SORNA of 1996).  *Id.*  It applied to sex offenders sentenced on or after September 1, 1996.  34-A M.R.S.A. § 11102 (Supp. 1996).  In the same legislation that enacted SORNA of 1996, the Legislature modified the criminal code to provide that sex offender registration requirements under the act were part of an offender's sentence.  P.L. 1995, ch. 680, § 4 (effective July 4, 1996) (codified at 17-A M.R.S.A. § 1152(2-C) (Supp. 1996) ("As part of a sentence, the court shall order every natural person who is a convicted sex offender as defined under Title 34-A, section 11103 to satisfy all requirements set forth in [SORNA of 1996].")).  Although SORNA of 1996 continued to limit the post-release registration obligation to fifteen years, 34-A M.R.S.A. § 11121(2) (Supp. 1996), it created a stricter set of obligations, *see, e.g.*, *id.* § 11121(6)(C) (preventing offenders from petitioning for a waiver until at least five years after the requirement was imposed).

[¶14]  The most expansive set of amendments to SORNA became effective in 1999 (SORNA of 1999).  *See* P.L. 1999, ch. 437, § 2 (effective Sept. 18, 1999) (codified at 34-A M.R.S.A. §§ 11201-11252 (Pamph. 1999)).  SORNA of 1999

10

distinguished between "[s]ex offender[s]" and "[s]exually violent predator[s]" depending on the severity of the individual's underlying offense. 34-A M.R.S.A. § 11203(5), (8) (Pamph. 1999). Sex offenders were required to register for ten years, and sexually violent predators were required to register for life. *Id.* § 11225(1), (2). Further, SORNA of 1999 did away with the provision in SORA of 1992 and SORNA of 1996 that allowed the court to waive the registration requirement. *See id.* § 11225(4).[8] Although SORNA of 1999 initially applied only to individuals sentenced on or after September 18, 1999, *id.* § 11202, it was amended to apply retroactively to persons sentenced on or after June 30, 1992, *see* P.L. 2001, ch. 439, § OOO-7 (effective Sept. 21, 2001) (codified at 34-A M.R.S.A. § 11202 (Pamph. 2001)), and later to apply retroactively to persons sentenced on or after January 1, 1982, *see* P.L. 2005, ch. 423, § 1 (effective Sept. 17, 2005) (codified at 34-A M.R.S. § 11202(1) (2005)).[9] A final relevant change in SORNA of 1999 is that it required registrants qualifying as sexually violent predators to report in person every

---

[8] SORNA of 1999 removed the registration obligation in limited circumstances: "If the underlying conviction for a sex offense or sexually violent offense is reversed, vacated or set aside, or if the registrant is pardoned for the offense, registration or continued registration as a sex offender or sexually violent predator is no longer required." 34-A M.R.S.A. § 11225(4) (Pamph. 1999).

[9] The 2001 public law that amended SORNA of 1999 to make it applicable to offenders sentenced on or after June 30, 1992, also repealed SORA of 1992 and SORNA of 1996. *See* P.L. 2001, ch. 439, § OOO-5 (effective Sept. 21, 2001).

ninety days to a local law enforcement agency to (1) verify their domicile, residence, employment, and college or school enrollment and (2) provide fingerprints and a personal photograph. *See* P.L. 1999, ch. 437, § 2 (effective Sept. 18, 1999) (codified at 34-A M.R.S.A. §§ 11221(1)(B), 11222(4) (Pamph. 1999)).

[¶15]  In an amendment to SORNA of 1999 that took effect in 2004, the Legislature eliminated the language that designated SORNA registration "[a]s part of a sentence." *See* P.L. 2003, ch. 711, § B-13 (effective July 30, 2004) (codified at 17-A M.R.S.A. § 1152(2-C) (Supp. 2004)) ("*At the time the court imposes a sentence*, the court shall order every natural person convicted of a sex offense or a sexually violent offense . . . to satisfy all requirements set forth in [SORNA of 1999]." (emphasis added)).

[¶16]  In *State v. Johnson*, we commented on the significance of the 2004 amendment.  2006 ME 35, ¶ 14, 894 A.2d 489.  In *Johnson*, the offender was erroneously classified under SORNA of 1999 as a "sex offender" instead of as "a sexually violent predator." *Id.* ¶ 5.  The trial court granted the State's motion to correct the classification pursuant to M.R.U. Crim. P. 1(c) (authorizing court action under any lawful procedure when no procedure is specified). *Id.* ¶¶ 7-8 & n.6.  Johnson appealed. *Id.* ¶ 8.  Pertinent here, we pointed out that, "pursuant

to the [2004] amendment, registration is now a separate order that is not part of the criminal sentence. At the time of Johnson's sentence, however, sex offender registration was part of his criminal sentence." *Id.* ¶ 14 (citation omitted). We therefore vacated the judgment on the ground that the Rule 35(a) procedure for correcting a sentence applied to Johnson's SORNA classification, but the State did not timely pursue the correction. *Id.*

[¶17] In response to our decision in *Johnson*, the Legislature amended SORNA again to enable the correction of erroneously assigned terms of registration. P.L. 2009, ch. 365, §§ B-15, B-22 (effective Sept. 12, 2009, retroactive to Jan. 1, 1982) (codified at 34-A M.R.S. § 11222(1) (2025)). The language in the statute as amended, which remains unchanged, reads:

> At any time, the [SBI] may correct the term of a registration erroneously assigned to an offender or registrant. In such instances, the [SBI] shall notify the offender or registrant, the district attorney and court in the jurisdiction where the conviction occurred and the law enforcement agency having jurisdiction where the offender or registrant is domiciled, resides, is employed or attends college or school, if applicable.

34-A M.R.S. § 11222(1) (2025). In explaining the context in which the amendment was passed, the enacted bill's summary explicitly states that the amendment, in response to *Johnson*, "specifies that the [SBI] may correct the term of a registration erroneously assigned to an offender or registrant, as

registration is not part of a criminal sentence." L.D. 1157, Summary ¶ 7 (124th Legis. 2009) (emphasis added).

## B. Validity of SORNA of 1999's Retroactive Application Under the Ex Post Facto Clause

[¶18] We have had several occasions to consider whether the retroactive application of an amendment to SORNA of 1999 violates the federal Ex Post Facto Clause. The foundational case is *Letalien*, 2009 ME 130, 985 A.2d 4. There, Letalien was convicted and sentenced for gross sexual assault, while SORNA of 1996 was in effect.[10] *Id.* ¶¶ 2, 4. He was initially required to register for fifteen years but could petition for a waiver after five years of registration. *Id.* ¶ 5. However, once the 1999 and 2001 amendments took effect, Letalien was retroactively subjected to the more burdensome requirements of the amended SORNA of 1999: lifetime registration, quarterly in-person check-ins with law enforcement, and the loss of an opportunity to seek a waiver. *Id.* ¶¶ 6-8. Letalien did not comply, and the State charged him by criminal

---

[10] We noted in *Letalien* that the trial court's finding that Letalien was sentenced on August 30, 1996, raised the issue of whether Letalien was subject to SORA of 1992 or SORNA of 1996. *Letalien*, 2009 ME 130, ¶¶ 41-42, 985 A.2d 4. Although SORNA of 1996 took effect on July 4, 1996, P.L. 1995, ch. 680, § 13 (effective July 4, 1996) (codified at 34-A M.R.S.A. §§ 11101-11144 (Supp. 1996)), the section establishing the revised registration requirements provided, "This chapter applies to all sex offenders sentenced . . . on or after September 1, 1996," 34-A M.R.S.A. § 11102 (Supp. 1996). We did not resolve whether Letalien was subject to SORA of 1992 or SORNA of 1996 because, among other reasons, "the State ha[d] not assigned as error the District Court's legal conclusion that Letalien was subject to SORNA of [1996]." *Letalien*, 2009 ME 130, ¶ 41, 985 A.3d 4.

complaint with failure to comply with SORNA of 1999. *Id.* ¶¶ 1, 13. On Letalien's motion, the trial court dismissed the complaint on the basis that SORNA of 1999 was applied unconstitutionally under the federal Ex Post Facto Clause. *Id.* ¶¶ 13-14.

[¶19] We upheld the trial court's order of dismissal because we agreed that Letalien's prosecution was unconstitutional under the Ex Post Facto Clause. *Id.* ¶¶ 63-64. In reaching that conclusion, we made two important points. First, in analyzing whether SORNA's effects render it punitive and negate its intended design as a civil statute, we clarified that "SORNA of 1999 is properly evaluated on its face, and not in relation to how it has been applied against Letalien or other individuals." *Id.* ¶ 34. Indeed, we noted that a facial analysis avoids "inconsistent outcomes" and unnecessary ex post facto challenges based on personal circumstances. *Id.* Second, we stressed the significance of our holding in *Johnson* that, for offenders sentenced *before* the July 30, 2004, amendment, "the inclusion of compliance with SORNA of 1999 *[is] part of an offender's criminal sentence*," although we reiterated our statement in *Johnson* that "the same was not true . . . for offenders sentenced on or after July 30, 2004, whose sex offender registration requirement was separately ordered and not part of the underlying sentence." *Id.* ¶ 61 (emphasis

added). Because compliance with SORNA of 1999 was part of Letalien's original sentence, we held that the enhancement of Letalien's obligations under SORNA of 1999 "constitute[d] a part of the punishment administered by the State in response to that offender's criminal conviction," thereby violating the Ex Post Facto Clause. *Id.*

[¶20] We expanded upon *Letalien* in *Doe v. Williams*, 2013 ME 24, 61 A.3d 718, where we held that SORNA of 1999 could be retroactively applied to offenders sentenced before SORA of 1992 was passed because the obligation to register was not originally part of the offenders' sentences, in contrast to the circumstances in *Letalien*, thereby making this application of SORNA of 1999 nonpunitive. *Id.* ¶¶ 46, 51.[11] We considered similar questions of retroactivity in two more recent cases. *See Anderson*, 2015 ME 3, ¶¶ 1-6, 108 A.3d 378

---

[11] In *Williams*, we also noted that legislative amendments following *Letalien* alleviated some of SORNA's obligations, which we had understood to create an "affirmative disability or restraint" that, in combination with the registration requirement's role as part of the sentence, created the Ex Post Facto violation in *Letalien*. 2013 ME 24, ¶¶ 28-33, 46, 61 A.3d 718. For instance, between the time of our decisions in *Letalien* and *Williams*, the Legislature expanded an exception to registration and reduced the frequency of in-person reporting to law enforcement. *See Williams*, 2013 ME 24, ¶ 6, 61 A.3d 718; P.L. 2009, ch. 570, §§ 1-5 (emergency, effective Mar. 30, 2010) (codified at 34-A M.R.S. §§ 11202-A, 11222(4-A), 11225-A(1) (2010)). In the present case, the parties have not addressed whether Gantnier's reclassification as a lifetime registrant amounted to an affirmative disability or restraint under the first *Mendoza-Martinez* factor, *see Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963) (identifying factors, mentioned in *Letalien*, governing whether an intended civil statute becomes punitive in light of its purpose or effect). Rather, the parties focus only on the scope of the second *Mendoza-Martinez* factor, disputing whether Gantnier's initial registration obligation was part of a sentence, which would historically be regarded as punishment. *See id.* at 168. The State concedes that if Gantnier's registration requirement had been part of his sentence, then his reclassification violated the Ex Post Facto Clause.

16

(holding that it was unconstitutional to impose SORNA of 1999 registration requirements on a defendant whose offense was added to the list of qualifying sex offenses only after his sentencing in 2003); *Proctor*, 2020 ME 107, ¶¶ 1-3, 28-29, 237 A.3d 896 (remanding to the trial court because the record was insufficient for us to reach a conclusion about whether the application of SORNA of 1999 to an offender unconstitutionally enhanced the offender's 1992 sentence).

**C.     Validity of the Correction of Gantnier's Term of Registration under the Ex Post Facto Clause**

[¶21]  In this case, the SORNA of 1999 provision under consideration for its retroactive application is 34-A M.R.S. § 11222(1) (2025), which permits the State to correct an erroneously assigned registration term.  There is a critical difference between Letalien's case and Gantnier's: because Gantnier was convicted in 2006 and sentenced in 2007, the 2004 amendment to SORNA of 1999 applies.  *Cf. Letalien*, 2009 ME 130, ¶¶ 1-2, 985 A.2d 4 (holding Letalien's 1996 sentence unconstitutional).  This means that, by statute, Gantnier's initial ten-year term of registration was "not part of [his] criminal sentence." *Johnson*,

2006 ME 35, ¶ 14, 894 A.2d 489; *see* P.L. 2003, ch. 711, § B-13 (effective July 30, 2004) (codified at 17-A M.R.S.A. § 1152(2-C) (Supp. 2004)).

[¶22] Gantnier disputes the notion that the 2004 amendment prevented his ten-year registration obligation from qualifying as part of his sentence. He argues that the registration obligation must be deemed part of his sentence because it appears on the judgment and commitment form that records his sentence. And, because his duty to register under SORNA for ten years appeared next to a box that was checked on his judgment and commitment form, he claims that it was part of his sentence.

[¶23] We disagree with Gantnier's position. The mere fact that the registration obligation appeared on the same form as his sentence does not make the obligation part of the sentence. As a matter of separation of powers, the style of court form used to record a SORNA of 1999 registration obligation cannot somehow cause the obligation to be part of the sentence, contrary to the Legislature's 2004 amendment to SORNA of 1999. In other words, the presence of the ten-year registration requirement on the judgment and commitment form does not transform the otherwise civil regulatory penalty into a punitive measure in the way described in *Letalien*. In *Johnson,* we held that SORNA of 1999 registration can be imposed in connection with a sentence without

becoming "part of the criminal sentence" for the purposes of determining whether the holding in *Letalien* applies. 2006 ME 35, ¶ 14, 894 A.2d 489.[12]

[¶24] A separate reason for rejecting Gantnier's argument about the judgment and commitment form is that our evaluation of the constitutionality of the retroactive correction of his registration obligation focuses on the facial validity of the statute authorizing the correction, 34-A M.R.S. § 11222(1)

---

[12] Contrary to our plain holding in *Johnson*, the dissent not only embraces Gantnier's argument but takes it further in positing that the trial court's passing mention of SORNA of 1999 in a colloquy with counsel at the outset of the sentencing hearing helped make SORNA of 1999 registration part of the sentence. Dissenting Opinion ¶¶ 29-31 & n.13. This would be a novel test. As *Johnson* exemplifies, we have hitherto looked to the applicable statutes, not sentencing transcripts, in deciding whether SORNA of 1999 registration is part of a criminal sentence. 2006 ME 35, ¶ 14, 894 A.2d 489; *see also Letalien*, 2009 ME 130, ¶¶ 1, 34, 985 A.2d 4 (holding that our legal analysis of the constitutionality of the retroactive application of SORNA of 1999 "depend[ed] on a facial examination of the statute"). The dissent's test would also hamper trial judges in their work because it ignores reality. SORNA of 1999 registration is regularly discussed by prosecutors, defense counsel, and judges during sentencings for sex offenses subject to SORNA of 1999 for the simple reason that SORNA of 1999 applies as a consequence of such sentencings. A rule that no mention of SORNA of 1999 may be made until after such a sentence has been imposed would be a pointless burden.

Further, the dissent's presumption that the trial court incorporated SORNA of 1999 registration into the sentence is belied by the sentencing transcript, which shows that, after imposing sentence, the court explicitly differentiated between the sentence and SORNA of 1999 registration:

> Okay. Now, because of the fact that this was an—the unsuspended portion is thirteen months, that means, Mr. Gantnier, that you have the right to appeal the sentence, as well as the right to appeal the verdict.
>
> . . . .
>
> I will also order that you submit to registration under the State's Sex Offender Registration law as a ten-year registrant.

(2025), not on how the statute happened to be applied to a particular sex offender. In *Letalien,* we said:

> If courts entertain as-applied challenges, SORNA of 1999 might be found constitutional when applied retroactively to some individuals, but unconstitutional when applied retroactively to others, with the fulcrum of each decision being the personal circumstances of each offender. The ex post facto prohibition is intended to act as a check on the exercise of legislative authority as it affects broad categories of persons, and is not intended to create an individual right to challenge a retroactive law based on the effect that the law has on each person's individual circumstances. For ex post facto purposes, SORNA of 1999 is properly evaluated on its face, and not in relation to how it has been applied against Letalien or other individuals.

2009 ME 130, ¶ 34, 985 A.2d 4.

[¶25] The constitutional validity of the retroactive correction of an erroneously assigned term of SORNA of 1999 registration plainly does not—and should not—depend on individual anomalies such as whether the erroneous term was recorded on the same form as the sentence or on a different form, or whether the erroneously assigned term had expired before being corrected.

[¶26] Gantnier makes the additional argument that the heightened requirement of lifetime registration was unlawful because it was implemented through 34-A M.R.S. § 11222(1) instead of Rule 35(a), which allows for the correction of an illegal sentence within one year after the sentence is imposed.

His argument is foreclosed by our decision in *Johnson*, in which we held that, although Rule 35(a) was "the exclusive means by which the State could seek to modify [Johnson]'s sex offender classification under SORNA [of 1999]," the same "was not true . . . for offenders sentenced on or after July 30, 2004, whose sex offender registration was separately ordered and not part of the underlying sentence." *Letalien*, 2009 ME 130, ¶ 61, 985 A.2d 4 (citing *Johnson*, 2006 ME 35, ¶¶ 13-14, 894 A.2d 489). Accordingly, the State properly pursued the only remedy available to it by reclassifying Gantnier under section 11222(1).

[¶27] Because Gantnier's initial duty to register as a sex offender was not part of his sentence and thereby not a punitive obligation, the State did not violate the federal Ex Post Facto Clause by retroactively correcting his SORNA of 1999 classification to that of a lifetime registrant.

The entry is:

> Judgment affirmed.

––––––––––––––––

CONNORS, J. with whom STANFILL, C.J., joins, dissenting.

[¶28] I respectfully dissent.

[¶29]  The issue is whether the ten-year registration was imposed as a part of Gantnier's sentence.  If it was, then the only way to correct the mistaken registration component without running afoul of the Ex Post Facto clause would be for the State to successfully move within one year to correct the sentence pursuant to Maine Rule of Unified Criminal Procedure 35.  *See State v. Letalien*, 2009 ME 130, ¶ 11, 894 A.2d 489; *State v. Johnson*, 2006 ME 35, ¶ 14, 894 A.2d 489.  Here, not only did the State not file a motion but during the sentencing proceeding when the court was calculating the time for registration and asked the prosecutor what length of time it should be, the prosecutor confirmed that it should be ten years.[13]

[¶30]  It does not matter that the statute changed prior to this sentencing to indicate that registration would not be a part of a sentence because here, the trial court as a matter of fact nevertheless made it a part of the sentence.  A trial court can impose a sentence contrary to that permitted by statute and that

---

[13]  The colloquy at sentencing was as follows:

> THE COURT: I believe this . . . does require a registration under the Sex Offender Registration Act, but I believe it is the shorter period.
>
> DEFENSE COUNSEL: That's my understanding.
>
> THE COURT: Ten year period.
>
> PROSECUTOR: I believe that would be the case, Your Honor, because he has only been convicted of one count.

sentence must still be corrected within the one-year period permitted under Rule 35. *See State v. Gilman*, 2010 ME 35, ¶ 11 n.4, 993 A.2d 14 (stating that when the sentencing judge imposed less than the statutory mandatory minimum, Rule 35 was the correct vehicle to correct the illegal sentence).

[¶31]  At the sentencing proceeding, the court discussed registration within the third step of the three-step *Hewey* analysis.  There was no separation between the court's identification of the sentence and the discussion of registration; registration was discussed within the court's identification of the last component of the sentence itself.  The incorporation of the registration requirement into the sentence is further reflected by the judgment and commitment form on which the box was checked ordering a ten-year registration.

[¶32]  Finally, I note that concluding that registration was a component of the sentence here does not impose a difficult burden on the trial courts in sentencing hearings.  First, a problem arises only when the wrong registration period is imposed, a rare mistake.  Second, the judgment and commitment form now facilitates the separation of the sentence from registration.  Third, we doubt that the specific facts presented in this case will be replicated: where the trial court makes an informed and intelligent choice—albeit an incorrect one—

to embed a ten-year registration period as a part of the sentence. Trial courts can and easily do complete the imposition of the sentence itself and subsequently inform the defendant of a separate registration requirement.

---

Jeffrey T. Edwards, Esq. (orally), Preti, Flaherty, Beliveau & Pachios, LLP, Portland, for appellant Daniel Gantnier

Maeghan Maloney, District Attorney, and Jacob Demosthenes, Asst. Dist. Atty. (orally), Prosecutorial District IV, Augusta, for appellee State of Maine

Kennebec County Unified Criminal Docket docket number CR-2022-593
FOR CLERK REFERENCE ONLY